ARKANSAS RELEASE GUIDANCE FOUNDATION v.
JAMES HUMMEL, ET AL

5-4678                                   435 S.W. 2d 774

Opinion Delivered January 13, 1969

*Burl C. Rotenberry* and *Gene Worsham* for appellant.

*U. A. Gentry* and *H. B. Stubblefield* for appellees.

J. FRED JONES, Justice. This is an appeal by Arkansas Release Guidance Foundation from an adverse decree of the Pulaski County Chancery Court on a petition for a declaratory judgment filed by the appellant. The question presented is whether a "Halfway House" as proposed by the appellant, is an "institution of an educational, religious or philanthropic nature" per-

mitted in a class "D" apartment district under the zoning ordinances of the City of Little Rock.

The appellant, Arkansas Release Guidance Foundation, was incorporated as a domestic nonprofit corporation on October 20, 1967, for the following corporate purposes:

"To acquire and operate one or more places of residence for ex-penitentiary inmates where they may reside temporarily after having been paroled, released or after having completed their sentences and during the difficult transition period from a penitentiary inmate to a completely independent free world citizen;

To provide for ex-prisoners during this transition period room and board, individual counseling, educational and vocational training, job placement services, physical and mental health services, and other rehabilitative services of like kind and nature;

To provide rehabilitative facilities and services in kind and nature as described above for offenders placed on probation."

The appellant purchased two adjacent two and one-half story residential buildings at 2115 and 2121 Arch Street in the City of Little Rock, and on January 30, 1968, filed with the Depártment of Community Development for the City of Little Rock, applications for certificates of occupancy. The applications set out that the property was located in a residential zoning district "D" of the City of Little Rock. Both applications were practically the same, and the one for 2115 Arch Street stated as follows:

"The Arkansas Release Guidance Foundation is a non-profit organization incorporated under Ar-

kansas law. It proposes to operate this and the adjacent property (2121 Arch Street) as a 'group house' for single, male, ex-prisoners paroled or discharged from prison. Probationers may also be eligible for residence. The property will serve as a temporary residence for these men until they are able to become fully self-sufficient. These men will live no more than two to an apartment unit and there will be no more than ten such house residents at this location at any given time. Breakfast and the evening meal will be served to the residents of both houses in a dining hall located in the house at the above address. The noon meal will be eaten out. This house will have resident, full-time, house parents, consisting initially of a man, his wife and their minor children. This person will be a paid staff employee of the ARGF. As nearly as possible, a family atmosphere will be created for the house residents. In addition to the house parents, the full-time, paid Executive Director of the ARGF will be on duty at the house much of the time. Inspections of the premises have already been made by municipal building, health and fire authorities and the ARGF intends to comply with all municipal code requirements in connection therewith prior to commencing operation as a 'group house' as above described.''

On February 2, 1968, the appellant was advised by the director of the Department of Community Development that certificates of occupancy would be issued as requested when the municipal code requirements as to inspections of the property were complied with. In the meantime thirteen property owners in the vicinity of appellant's property filed petitions with the city remonstrating against the proposed use of appellant's property, and the appellees threatened the appellant with legal action to prevent the operation of the proposed Halfway House at the proposed addresses.

956

On February 6, 1968, because of threatened litigation, the appellant filed its petition for a declaratory judgment in the Pulaski County Chancery Court naming the thirteen remonstrating individual property owners as defendants. The prayer of the petition was for a declaratory judgment and determination that "said Halfway House may be properly and legally operated within said class 'D' zoning area" and that the court declare and determine the appropriate zoning classification of the plaintiff's Halfway House facility under the zoning regulations and code of ordinances of the City of Little Rock, and that said Halfway House facility be declared appropriately located in said class "D" zoning district.

The appellees filed their answer praying a dismissal of the petition filed by the appellant, and in the alternative, that the appellant be permanently enjoined from the operation of the facility at the proposed site.

After hearing testimony on both sides of the issue, on April 24, 1968, the chancellor rendered a decree as follows:

"The Court, being well and sufficiently advised as to all matters of fact and law arising herein, and the premises being fully seen, finds that the use or proposed use to which the Halfway House facility is, among others, to be put is for the quartering, housing or keeping of convicts, including probationers and parolees, and that this is not a proper use to which the property located in Class 'C' or 'D' zoning district in the City of Little Rock, Arkansas may be put; and that the operators of the Halfway House facility should be enjoined and restrained from using said property for such purposes.

It is, therefore, by the Court considered, ordered and adjudged that the prayer of the Complaint

insofar as it requests usage of said property for the above purposes be, and it is hereby denied. The Plaintiff, its agents, officers and employees are hereby permanently enjoined and restrained from using the Halfway House facility on the property located at the Northeast corner of the intersection of 22nd and Arch streets in the City of Little Rock, Arkansas, designated as 2115 and 2121 Arch Street for the quartering, housing or keeping of convicts, including probationers and parolees. All costs herein are adjudged against the Plaintiff."

On appeal to this court the appellant relies on the following points for reversal:

"The court erred in finding appellant's proposed use of its property to be in violation of the applicable zoning classification.

To the extent that the court may have found appellant's proposed use of its property to be a nuisance, if at all, the court erred."

The City of Little Rock draws its zoning authority from Ark. Stat. Ann. § 19-2805 (Repl. 1968) which provides as follows:

"Cities of the first and second class are hereby authorized to establish zones limiting the character of buildings that may be erected therein. Such zones may be of three [3] classes: First, portions of the city where manufacturing establishments may be erected or conducted; Second, portions of the city where business other than manufacturing may be carried on; Third, portions of the city set apart for residence."

Arkansas Statute Annotated § 19-2806 (Repl. 1968) provides as follows:

"When the city council shall have laid off such zones it shall not be lawful for anyone to construct or carry on within a given zone any business not authorized by the ordinance of such city establishing the same, unless with special permission granted by the council of said city, or by a commission which it may create for the purpose of determining whether an exception shall be made in the particular instance; and such exceptions shall be made only for good cause, and in case of abuse the adjacent property owners shall have the right to appeal to the courts of chancery to protect their property from depreciation by reason of the setting up of such exceptional business within the zone."

Little Rock Municipal Ordinance No. 5420, as amended, was passed under authority of the aforesaid statute, and § 43-4 "C" of the ordinance pertaining to "C" two-family districts provides as follows:

"In the 'C' two-family district no building or land shall be used and no building shall be hereafter erected, converted or structurally altered, unless otherwise provided in this chapter, except for one or more of the following uses:

(1)  Any use permitted in the 'A' one-family district and the 'B' residence district.

(2)  Two-family dwellings.

(3)  Reserved.

(4)  Institutions of an educational, religious or philanthropic nature. * * *"

Appellant's property is in a "D" zone district and § 43-5 of the ordinance provides:

"In the 'D' and 'E' apartment districts no building or land shall be used and no building shall

be hereafter erected, converted or structurally altered, unless otherwise provided in this chapter, except for one of the following uses:

(1) Any use permitted in the 'C' two-family district."

The appellant contends that its proposed use of its property as a Halfway House is permissible under the ordinance and the appellees contend that it is not. The parties seem to agree, however, that if appellant's proposed use of its property is permissible under the ordinance, the permission is to be found under Subsection 4 of § 43-5 "C," supra, applicable to "institutions of an educational, religious or philanthropic nature."

Neither the appellant nor the appellees have cited any case, and our own research has revealed none, in which any state court has considered the use of property as a Halfway House for parolees and released convicts as institutions of an educational, religious or philanthropic nature within the terms of a zoning ordinance.

The ordinance involved here contains 63 definitions of the words and terms used therein, and "educational institution" is defined as follows:

"A public, parochial or private pre-primary, primary, grammar or high school; a private preparatory school or academy providing courses of instruction substantially equivalent to the courses offered by public high schools for preparation for admission to college or universities which award B.A. or B.S. degrees; a junior college, college or university either public or parochial or founded or conducted by or under the sponsorship of a religious or charitable organization, or private when such junior college, college or university is not conducted as a commercial enterprise for profit. Noth-

ing in this definition shall be deemed to include trade or business schools or colleges."

"Religious" and "philanthropic" are not defined by the ordinance, nor is an institution of a "religious or philanthropic nature" defined.

The appellees were all residents of the same "D" zone or district where appellant's property is located, so certainly the chancellor did not err in restricting his decree to the "D" zone in which the parties defendant lived. (See Ark. Stat. Ann. § 34-2510 [Repl. 1962]). So the question here is whether appellant's proposed *use* of its property is permissible under the provisions of the zoning ordinance, in the "D" zone where the property is located.

The evidence in this case reveals that the appellant's property is located in a quiet, older residential section of Little Rock, consisting primarily of large two story homes, some of which have been converted into apartment buildings and some still occupied by the original owners as single family dwellings. The appellent does not contend that the proposed use of its property would convert the property from family dwellings to an "educational institution" as defined in the ordinance, and there is no serious contention that the proposed Halfway House would be an institution of an educational or religious nature. So the question boils down to whether appellant's proposed use of its property as a Halfway House would constitute an institution of a "philanthropic nature" as contemplated in the passage, and as intended by the terms, of the ordinance.

Section 43-22 (4) of the zoning ordinance fixes the jurisdiction of the board of zoning adjustment and vests it with the power to hear requests for variances from the literal provisions of the ordinance, but courts have no such authority under the statutes or under the declaratory judgment procedure. We conclude, therefore,

that in the absence of an ordained definition for institutions of "religious or philanthropic nature", we must examine the ordinance in the light of its purpose, and the appellant's petition in the light of the use to be made of the property.

McQuillian, Municipal Corporations, volume 8, 1965 revised, § 25.17, states:

"The ultimate and general purposes of zoning are those traditionally associated with the police power, to-wit: The public health, safety, morals and general welfare, peace and order, and public comfort and convenience."

In 101 C.J.S., Zoning, § 16, we find the following:

"In order to be valid as a proper exercise of the police power, especially where their application will cause a destruction of property values, zoning laws, ordinances, by-laws, regulations, and restrictions must advance, promote, or tend to be designed to promote the public health, safety, morals, or general welfare or be reasonably necessary for the protection of the public health, safety, comfort, morals, or welfare, or have or bear a real and substantial relation to public health, safety, morals, or general welfare; and it has been held that such enactments must bear the required relation with respect to the particular premises to which they are applied. Citing *Kessler* v. *Smith,* 142 N.E. 2d 231, 104 Ohio App. 213, appeal dismissed *Smith* v. *Village of Glenwillow,* 146 N.E. 2d 308, 167 Ohio St. 91."

The case of *City of Little Rock* v. *Sun Building & Developing Co.,* 199 Ark. 333, 134 S.W. 2d 583, had to do with a zoning ordinance where it was contended that the ordinance amounted to the taking of private property without just compensation, and in that connection, this court said:

"The theory is that the owner of such property is sufficiently compensated by sharing in the general benefits resulting from the exercise of the police power. Many cases to that effect are cited in the note appearing at page 905, 12 C.J., in the article on Constitutional Law, subhead Police Power. But these and all other cases appear to be in accord in holding that this power may not be arbitrarily used, *and must in all cases bear a definite relation to the health, safety, morals and general welfare of the inhabitants of that part of the city where the property zoned is situated.*" (Emphasis supplied.)

Now, as to the ordinance we are dealing with in the case at bar: "Educational institution" is specifically defined by the longest of the 63 definitions in the ordinance and "educational institution" is the *only* institution that *is* defined. It is noted that the definition specifically refers to school or academy, public or founded or owned or conducted by or under the sponsorship of a religious or charitable organization. The definition also includes "college or university, public or founded or conducted by or under the sponsorship of a religious or charitable organization." Certainly it is reasonable to interpret an "institution of an educational nature", as set out in § 43-4 "C" (4), supra, to simply mean an "educational institution" as defined in the ordinance. But the ordinance provides no such aid in defining "institutions of a religious or philanthropic nature." The words "religious" and "philanthropic" are broad general terms and as was said of the terms "philanthropic" and "eleemosynary" in the 1942 case of *Westchester County Soc. for Prevention of Cruelty to Animals, Inc.* v. *Mengel, et al., Zoning Board of Appeals,* 54 N.E. 2d 329, they

". . . are not technical words of art or words which have been defined by statute or which have acquired a rigid meaning by judicial construction.

They describe a field without established land marks. Often, perhaps ordinarily, these words denote a purpose to promote the welfare of mankind by works of charity. Sometimes they are used in broader sense to denote an unselfish purpose to advance the common good in any form or manner. Such words reflect the context in which they are used and change in color and in scope accordingly.''

In Yonkley, Zoning Law and Practice, §§ 19-6—19-7, third edition, in connection with the interpretation of zoning ordinances, is found the following statements:

''Zoning ordinances should be given a fair and reasonable construction, in the light of their terminology, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the ordinance as a whole. A zoning ordinance must be construed reasonably and with a regard for the objects sought to be attained. * * *

  *   *   *

An ordinance must be read to avoid, if possible, an arbitrary and capricious interpretation. The determination of the uses permitted in a zoning ordinance must be predicated on the wording thereof, and also on the context in which it occurs. In construing zoning ordinances what may be the most appropriate use of any particular property depends not only on all the conditions, physical, economic, and social, prevailing within the municipality and its needs, present and reasonably prospective, but also on the nature of the entire region in which the municipality is located and the use to which the land in that region has been or may be put most advantageously.''

964

Also in Yonkley, Zoning Law and Practice, §161, p. 320, first edition, is found the following:

". . . [I]n determining whether or not the use to which property is being used comes within the classification of use permitted in a zone under the particular facts of any case is a question of plain fact. The use conforms or it doesn't and each case must rest on its own particular facts."

The objects recited in appellant's corporate charter, as well as the testimony and other evidence before the chancellor, indicate that a maximum number of twenty men, all of them convicted criminals and parolees, would be assigned two to a room, and would be housed and boarded at the Halfway House. The record reveals that there are other so-called "halfway houses" in Little Rock, but none of them have to do with the rehabilitation of convicted felons.

So in the absence of specifically ordained definitions of institutions of a religious or philanthropic nature, we conclude that the chancellor was entitled to consider the overall purpose of zoning ordinances in general in determining whether appellant's proposed use of its property was permissible under the provisions of the ordinance. We conclude that the chancellor's findings that appellant's Halfway House is not an institution of an educational, religious or philanthropic nature, as contemplated by the ordinance, is not against the preponderance of the evidence and that the decree of the chancellor should be affirmed.

Affirmed.

HOLT, J., not participating.