**KESSLER et, Plaintiffs-Appellees, v. SMITH, Sr. et, Defendants-Appellants. SMITH, Plaintiff-Appellant, v. GLENWILLOW (Village), Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 23794, 23797. Decided April 17, 1957.

Woodle & Watchtel, for George Smith et al.

Ralph W. Bell, Richard G. Bell, Robert R. Freda, for Village of Glenwillow.

## OPINION

By HURD, J:

These actions in equity have been appealed from the Court of Common Pleas to this court on questions of law and fact for trial de novo. Having two cases before us for consideration, for purposes of clarity and brevity, the parties herein are referred to as follows: Louis F. Kessler, et al., as Kessler, George Smith, et al., as Smith, and the Village of Glenwillow as the Village. Because the issues between the parties in the cases are substantially the same, both cases were ordered to be consolidated in the Court of Common Pleas for the purpose of trial. The trial resulted in a finding and judgment against Smith in each case, enjoining him from the use of his property for trailer park purposes.

The record shows that Smith had previously expended substantial sums of money and considerable time and effort in the purchase and development of the property for trailer park purposes and that the provisions of a zoning ordinance, as applied retrospectively, would restrict its use to residence purposes only. Further facts, briefly summarized, are as follows: In July of 1952, Smith became the owner of eight acres of land in the Village of Glenwillow fronting upon Richmond Road 265 feet in width and extending back to Tinkers Creek, a distance of approximately 2275 feet. He purchased this land for the sole purpose of establishing and developing thereon a trailer park.

The Village of Glenwillow is a non-charter municipality operating under the general laws of the State of Ohio located in the southeastern part of Cuyahoga County. It is over six square miles in area. Its population, according to the latest census, is 257 people. In 30 years, it has had an increase in population of only 42 persons and at the time of trial had a population of only 40 people per square mile.

At the time Smith purchased the property and commenced to build,

the Village did not have either a building ordinance or a zoning law of any kind and there was no ordinance or law whereby a property owner within the Village was required to secure a building permit, all of which facts were ascertained by Smith before he purchased the land and commenced construction. Neither were there any restrictions by deed limiting the use of the land to any particular purpose, although the original petition of Kessler so alleged. The contract of purchase contained a provision specifically allowing the use of the property for trailer park purposes.

We find from the evidence that prior to any action of any kind by the Village looking to the enactment of a zoning ordinance, Smith, acting within his absolute rights, proceeded to construct and establish a trailer park upon the land in question. Accordingly, he secured a permit from the Department of Health of the State of Ohio approving detailed plans submitted by him for a proposed sewage treatment plant. After he purchased the land for which he expended the sum of $8700, he employed a firm of architects to survey the land and to prepare a complete set of plans for the construction of the trailer park at a cost of $1,000. He also employed a contractor to help him and his son with the work of construction for which he paid $1700. Before work could be commenced on the buildings to be erected, a well had to be dug and a roadway built over a ditch which ran across the property. For this purpose he purchased a well digger for $300 and forty feet of 48-inch reinforced concrete sewer pipe for the sum of $438.78. The sewer pipe was laid in the ditch and covered with dirt. A bulldozer was then brought in to fill the rest of the ditch and to grade the land. For this work, he paid $2,000. He then had delivered to the premises concrete block for use in the construction of a utility building, a septic tank and a filter bed. The cost of this concrete block was $1128.87. A utility building was completed prior to the passage of the zoning ordinance and the foundation had been constructed for the filter bed and the foundation and part of the walls of the septic tank had been built. Work had also been done on other structures. In addition to the foregoing, he expended $350 for gas and oil, $540 for labor, $700 for lumber, $150 for windows, and $94.55 for sand and gravel. He also purchased a dump truck for $1,000, a trencher for $1750 and a chain for same which cost $70 and a jeep high-lift for $600 to be used in the preparation and construction of the trailer park. This recitation of cost does not include a complete listing of all sums expended and the cost of work performed does not take into consideration the time and labor expended by Smith himself. Suffice it to say that all of this work was completed before the effective date of the zoning ordinance at a total cost in excess of $20,500.

Plans for the trailer camp were designed to provide space for approximately 200 trailers although it was the intention of Smith to begin operation of the camp with space for only 28 trailers and space for trailers of that number had been laid out and approaches for the use had been completed with a road between 1600 and 1700 feet in length. The septic tank was designed to be a large one sufficient to accomodate the requirements of a large trailer park. The filter bed intended to be

used in connection with the water supply of the trailer park was also designed to be a large one to accommodate the number of persons who might occupy a trailer park of that size.

The zoning ordinance of the Village became effective January 5, 1953. By its terms the Village was classified into three use districts. The property of Smith, together with neighboring properties, was zoned in a use district generally identified as residential. By the terms of the ordinance, land in residence districts was not permitted to be used for trailer park purposes. The ordinance further provided that no trailer camps or house trailers would be permitted to occupy any land in any part of the Village. We find as a fact that the practical operation and effect of the zoning ordinance of the Village as applied to Smith's land would restrict the use of the eight acres of land to the construction of one single residence.

The basic question presented is whether the zoning ordinance, as enacted retroactively, is valid and constitutional as applied to Smith and his land in view of the fact that he had expended such substantial sums in its purchase and development prior to the enactment of the ordinance.

The answer to this question involves a consideration of fundamental principles of law and equity in relation to zoning ordinances. All zoning laws and regulations must find their justification in some aspect of the police power asserted for the public welfare. Whether the power exists to forbid the development of property for a particular use is to be determined by considering its use not in the abstract but in connection with the circumstances and the locality. If the provisions of the zoning ordinance, when applied to particular premises, are found to be clearly arbitrary and unreasonable, having no substantial relationship to public health, morals or safety, the ordinance as to that particular property must fall. Euclid v. Ambler Realty Co., 272 U. S. 365, 71 L. ed. 303, 47 S. C. 114; Nectow v. City of Cambridge, 277 U. S. 183, 72 L. ed. 842, 48 S. C. 447; **State, ex rel Synod of Ohio v. Joseph, 139 Oh St 229, 39 N. E. (2d) 515.**

Considering the rural character of the Village, the comparatively undeveloped and sparsely settled portion of the county in which this property and the Village is situated, the eight acre area of the property, the expenditure of substantial sums for purchase and development thereof, the nature and extent of such expenditure prior to the passage of the zoning ordinance, the provisions of the ordinance prohibiting Smith from the use of his property for a trailer camp and limiting its use to a single residence by retroactive legislation, cannot reasonably and truthfully be said to bear any substantial relationship to the public health, safety, welfare or morals.

It is fundamental that a zoning ordinance cannot, under the guise of police power, arbitrarily restrict the use of property to the extent of practical confiscation without just compensation.

In the case of **State, ex rel Weber v. Vajner, Bldg., Commr., 92 Oh Ap 233, 108 N. E. (2d) 569** (Appeal dismissed **158 Oh St 105, 106 N. E. [2d] 642**), this court declared, per Skeel, J., as set forth by syllabus two and **three:**

"2. To be a valid exercise of the police power of the state by a zoning ordinance, the benefits accruing to the public by virtue of the restricted use to which the property may be put must overbalance the restraint or detriment suffered by the private interests of the owner.

"3. Such restraint cannot totally prevent the owner from making some reasonable use of his property in the absence of proven necessity of the public's interest."

A trailer camp or park is not per se a nuisance. The use of the property for such a purpose was lawful at the time of its purchase and substantial development. At that time there was no law or ordinance which denied such use. In City of Akron v. Chapman, 160 Oh St 382, 388, 116 N. E. (2d) 697, 700, the Supreme Court declared:

"* * * The substantial value of property lies in its use. If the right of use is denied, the value of the property is annihilated and ownership is rendered a barren right. (Citing cases.)"

The ordinance in this case, passed and applied retrospectively, has the effect of denying the use of the property in the manner in which it was developed and would be tantamount to destroying an investment of considerable substance, and this without any real or substantial benefit in the public interest. The record in these cases and the history disclosed thereby indicates clearly that the ordinance was enacted primarily to prevent the completion and operation of this trailer camp when it was discovered that alleged deed restrictions would not accomplish that purpose. The application of the ordinance to a single individual and to a particular property, although on its face, having the appearance of uniformity, is, in fact, discriminatory and consequently an unreasonable exercise of the police power, particularly in its retrospective aspects as applied to the land in question. While Smith's business was not completely established at the time of the initiation of these proceedings in November of 1952, still there was such a substantial establishment and development thereof prior to the enactment of the ordinance that we think it comes within the protection of the due process clauses of both the Federal and State Constitutions. See City of Akron v. Chapman, supra.

From all the facts and circumstances appearing in the evidence, we find that the restraint attempted to be imposed upon Smith's property would totally prevent him from making a reasonable use thereof for the purposes for which it was purchased and substantially developed. We find also that there is a complete absence of a proven necessity of public interest in imposing such an unwarranted restraint. The ordinance, applied retrospectively, presents an extreme case of harshness and oppression as it affects the property of one person for whom it means confiscation without compensation. Since the zoning ordinance, under such circumstances, bears no real or substantial relationship to the public health, welfare, safety or morals, we find the same to be arbitrary, unreasonable, confiscatory, and therefore, invalid as being in contravention of constitutional rights under Article I, Section 1, 16 and 19, Ohio Constitution, and Section I, Artivle XIV of the Constitution of the United States. It follows that this court, in the exercise of the historic principles of equity and justice, must enter a decree in each

case, allowing the free use of the property here involved for the purpose for which it was purchased and substantially developed.

For other authorities to the same general effect see: **Henle v. City of Euclid**, 97 Oh Ap 258, 118 N. E. (2d) 682; **Proffett v. Valley View Village, Inc.**, 55 O. O. 81, 123 Fed. Supp. 339; Village of Terrace Park v. Errett, 12 Fed. (2d) 240 (U. S. Circuit Court of Appeals, 6th District); 7 McQuillin, Municipal Corps., 3rd Edition 490; 37 Am. Jur. 908, Sec. 280.

Counsel for the Village have stressed and relied to a great extent upon the cases of **State, ex rel., The Ohio Hair Products Co. v. Rendigs**, 98 Oh St 251, 120 N. E. 836; **Smith et al., v. Juillerat et al**, 161 Oh St 424, 119 N. E. (2d) 611, and Marblehead Land Co. v. City of Los Angeles, 47 F. (2d) 528 (U. S. Circuit Court of Appeals, 9th District).

The Ohio Hair Products case was an original suit in mandamus instituted in the Supreme Court to compel defendant to reissue a building permit which it claimed had been revoked without authority and in violation of law. The case involved the question of the authority of a municipality to revoke by ordinance a building permit theretofore issued for the construction of a building to be used for the processing, cleaning or renovation of uncured animal hair and packing house by-products in a residential district of Cincinnati. The record shows that after the ordinance was introduced in council, it was referred to the committee on health of said council and a public hearing was had by the committee which made an investigation of and visited places of business where the buying, selling, processing and manufacturing of the hair of animals and packing house products was prosecuted. As a result of the public hearing and the investigation, the committee reported that in all such places of business, noxious odors, gases and volatile substances were emitted and upon its recommendation, the ordinance was adopted prohibiting such business in a residential district. Thereupon the council passed a resolution by which the building commissioner was ordered to rescind the permit which he had given. Council thereby declared, in effect, that the business in which the relator was about to engage was offensive and unwholesome. The court declared that under such circumstances, it could not be said that council abused its discretion or that it acted arbitrarily. The court further held that the permit which had been issued in the case never had the elements of a contract and that it was within the power of council to revoke the permit, even though the relator had expended considerable money in the purchase of land and material and had entered into certain contracts for the erection of the building. The court further held that the relator acquired no vested rights and that the permit could be revoked in the exercise of legislative power on a subjct affecting **public health** or **public morals**. It is quite clear from an examination of the facts that the decision there rested primarily on the objection to a business which constituted a nuisance because of the emission of noxious odors and gases in a residence district. From the foregoing, it is readily apparent that the facts in that case are not analogous to the facts of the instant case.

The Juillerat case involved a situation where a township zoning resolution forbade strip mining in Poland Township, Mahoning County.

Prior to the adoption of the zoning ordinance, the coal company applied for and received a license to strip mine coal and posted a bond covering five acres of land under lease. The petition filed by the plaintiffs alleged that the proposed strip mining operations of the coal company **would constitute a nuisance** and that a township zoning law which would make strip mining in that area unlawful was awaiting submission to the electorate. At the time plaintiffs' action was commenced, the defendants had drilled a hole for **testing purposes** but had removed no coal from the property before the zoning ordinance became effective. At the trial of the case, the president of the company testified upon cross-examination, as appears at page 431 of the court's opinion, that so far they had been **testing only** and if the tests **proved inadequate or unsatisfactory, they would not strip mine even if permitted by the court to do so.** In answer to the question "To date you haven't even gotten to the place where you have removed any coal for testing purposes," he answered "No." The Supreme Court held, as shown by the syllabus, in paragraph four:

"Where no substantial nonconforming use is made of property even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property."

It is fundamental that the syllabus must be read in the light of the facts of the case. From the facts, it must be concluded that there was no actual or substantial construction for a specific "use" but that the work was preliminary and of a **testing nature only.** The facts of that case are clearly distinguishable from the instant case.

In Marblehead Land Company et al, v. City of Los Angeles, supra, it was held, as appears by headnote 11, that a zoning ordinance declaring oil well drilling operations illegal within the residence district which repealed a prior ordinance excepting such land from such district, was valid and not arbitrary or unreasonable. In that case, also, the work which had been done was preliminary and for the purpose of testing as to the existence of oil in the area in question. It is unnecessary, we think, to dwell upon the distinction between the facts of that case and the instant case.

In this connection we have examined carefully the recent opinion of the Court of Appeals of the Second District (Franklin County) in the case of **Meuser v. Smith, 74 Abs 417,** decided March 16, 1956. In that case, the appellees, after making a careful survey, purchased for the purposes of a trailer camp a tract of land consisting of eleven acres and commenced the development of the property which at that time was free from any zoning regulations. Plans were prepared and construction work was started upon a utility building and footings and foundation for same were completed in addition to other work. Thereafter, the tract was zoned for residential and agricultural purposes and injunction proceedings were commenced to restrain the completion of the trailer camp. The court held, as appears by paragraph one of the syllabus:

"Where, prior to the enactment of a zoning ordinance defendant acquires land, has plans and specifications prepared, secures the neces-

sary permits, begins excavation preliminary to construction of a utility building, the construction of footer and the construction of a foundation to ground level, all looking to the completion and operation of a trailer camp, he has established a nonconforming use within the meaning of the zoning laws even though such trailer camp was neither completed nor in use at the time of the enactment of the zoning law in question."

However, while we recognize the factual similarity of that case, our decision in the instant case is not predicated upon the grounds therein stated but rests upon what we deem to be broader principles of equity, particularly as it relates to the laws of zoning and retrospective legislation resulting in arbitrary and unreasonable restraints as applied to particular persons and property.

For the reasons stated, the injunction in favor of the plaintiff Smith against the Village of Glenwillow in Case No. 23797 will be granted as prayed for and the defendant Village enjoined from obstructing or interfering with plaintiff in the development and use of his land for a trailer park and the prayer of the petition of Kessler in Case No. 23794 will be denied. A journal entry may be drawn accordingly in conformity with the decrees herein enunciated. Exceptions to all proper parties. Order see journal.

SKEEL, PJ, KOVACHY, J, concur.