## CIRCUIT COURT OF MATHEWS COUNTY

Chapel Creek, Ltd.

v.

Mathews County

July 7, 1988

Case No. (Chancery) 87-61

By JUDGE T. J. MARKOW

This matter was heard on a writ of certiorari in accordance with § 15.1-497 of the Code of Virginia, the petitioner, Chapel Creek, Ltd., being aggrieved by a decision of the Board of Zoning Appeals of Mathews County.

On July 1, 1986, Mr. James T. Wood, primary stockholder of the petitioner, purchased a 15.56 acre parcel of land on Chapel Creek in Mathews County by deed dated June 17, 1986. Prior to recordation of the deed, in March of 1986, the Planning Commission for Mathews County conducted a public hearing concerning enactment of a proposed zoning ordinance which would preclude the construction of multi-family units on Wood's new tract. By May of 1986, the Planning Commission had completed its revisions of the proposed zoning ordinance. On October 22, 1986, Wood's agent obtained a building permit for construction of a single six unit multifamily residence. His application

noted that the structure was to be used for rental purposes. On November 17, 1986, an Erosion and Sediment Control Plan was approved. Shortly thereafter Wood began construction of the structure. Wood claims that he bought the parcel for development of a multifamily project and from the beginning employed engineers and architects to design structures for that purpose. No formal notice was given the county of these plans, nor was there any procedure for such notice prior to the enactment of the zoning ordinance.

In mid-January of 1987, the Board of Supervisors of Mathews County conducted its final work session on the proposed zoning ordinance. On January 15, 1987, the first notice of public hearing was duly advertised in regard to the adoption of the proposed zoning ordinance. That day, James Wood and his wife conveyed the parcel by deed to petitioner, Chapel Creek, Ltd. That deed was not recorded until the day of the public hearing on the zoning ordinance.

Starting in mid-January, Wood submitted to the County an Erosion and Sediment Control Plan for seven additional buildings in the Chapel Creek project. These plans were rejected, however, because additional information was required. At the end of January, Mathews County finally accepted an Erosion and Sediment Control Plan and forwarded it to the United States Soil Conservation Service in Gloucester for review and comment. On January 21, 1987, Mr. Wood's agent applied for additional sewage disposal construction permits for fifty-eight bedrooms contained in the seven proposed buildings. A week later, on January 28, 1987, Wood recorded in the Clerk's Office of Mathews County the deed to Chapel Creek, the Declaration of Chapel Creek Condominium, Articles of Incorporation, and Bylaws of the Chapel Creek Condominium Owner's Association. Drawings of the entire proposed site plan were first recorded on January 29, 1987. That same day, the Board of Supervisors conducted its public hearing on the zoning ordinance, which was then adopted effective on January 30, 1987, at 12:01 a.m.

At this point in time, the County had issued one building permit that authorized the completion of a single, six-unit building. Wood claims that he had no knowledge of any of the events concerning the proposed ordinance,

yet there is evidence that he knew of the impending changes and that he or his real estate agent attended the public hearings on the proposed ordinance.

Petitioner's request for a building permit for the additional buildings was first denied by the Zoning Administrator of Mathews County, which decision the petitioner appealed to the Board of Zoning Appeals on June 10, 1987.

The Board held that the right to construct the new buildings was not vested, thereby sustaining the Zoning Administrator's decision. The refusal was predicated on a finding that the condominium development was not grandfathered; that the necessary permits related only to the building which was under construction and was existing and in actual use at the time the ordinance became effective, that single building being a grandfathered nonconforming structure; that proposed additional buildings were neither existing nor actual and, hence, were not vested under the terms of the ordinance; that these findings were supported by the fact that no potable health department permits, sanitary sewer permits, erosion and sediment control permits or building permits were issued for any of the proposed structures prior to the effective date of the zoning ordinance, and that the one permitted building was represented by the petitioner in his building application to be a rental unit when, in fact, it was to be the first of several condominiums. This representation regarding the contemplated use of the property was construed by the Board to be evidence of a lack of good faith on the petitioner's part.

Petitioner then appealed to this court, which heard evidence and accepted briefs on the legal question of whether or not petitioner's proposal for additional construction of the Chapel Creek Condominium project was a vested, grandfathered right under the Mathews County Ordinance or § 15.1-492 of the Code of Virginia. The court concludes that it is not.

With regard to hearing on a writ of certiorari from a decision of a board of zoning appeals, the Virginia General Assembly in § 15.1-497 of the Code of Virginia, 1950, as amended, provides that the court may hear testimony if such will aid in the proper disposition of the matter. The court, in this instance, and over the County's objection, heard testimony from several witnesses, none of

whom offered testimony to the Board of Zoning Appeals. It is not the court's intention to condone petitioner's strategy of circumventing the proper administrative channels in this matter. The testimony of Mr. Vernon Kerns, Mr. Allan Bayle and Mr. James Wood is considered as a part of the court's record and in aid of the court's determination of the sole legal question whether rights had been vested prior to the effective date of the County's zoning ordinance. Denial of Mathews County's motion to strike this evidence in no way undermines the *prima facie* presumption of correctness afforded the Board of Zoning Appeals' decision in this matter. It is this court's policy to thoroughly air any factual matters and develop as complete a record as possible, in case the matter is appealed. Indeed, the testimony elicited at trial enabled the court to better assess the issues of good faith and substantial reliance.

The doctrine of equitable estoppel provides that the right to use or develop land cannot be infringed upon by legislative action when the owner or developer of such land has in good faith relied upon some act or failure to act by a governmental body and made a substantial change in position. *See Pure Oil Division v. City of Columbia,* 254 S.C. 28, 173 S.E.2d 140 (1970); *Clairmont Development Co. v. Morgan,* 222 Va. 255, 149 S.E.2d 489 (1966); *Verratti v. Township of Ridley,* 416 Pa. 242, 206 A.2d 13 (1965); *Grayson v. City of Birmingham,* 277 Ala. 522, 173 So. 2d 57 (1963); · Annotation, "Construction of New Building or Structure on Premises Devoted to Nonconforming Use as Violation of Zoning Ordinance," 10 A.L.R.4th 1122 (1981); Annotation, "Zoning: Building in Course of Construction as Establishing Valid Nonconforming Use or Vested Right to Complete Construction for Intended Use," 89 A.L.R.3d 1051 (1979).

Although the general rule is that a use must have been actually demonstrated prior to enacting a zoning ordinance in order to qualify as a valid nonconforming use, there has evolved a general exception that a property owner may acquire a valid nonconforming use or acquire a vested right to complete construction of a nonconforming building where, in good faith *and in reliance upon a validly issued building permit,* the property owner has begun substantial construction or has incurred substantial

expenses relating directly to the construction. *Todem Homes, Inc. v. Board of Zoning Appeals*, 74 A.D.2d 908, 425 N.Y.S.2d 852 (1980), *Prince George's County v. Equitable Trust Co.*, 44 Md. App. 472, 408 A.2d 737 (1979); *Perkins v. Joint City-County Planning Com.*, 480 S.W.2d 166 (1972). *Donadio v. Cunningham*, 58 N.J. 309, 277 A.2d 375 (1971). The most obvious missing link in petitioner's case is the threshold government act, the issuance of a building permit.

Here, only one permit has been issued, that for the construction of a single multifamily dwelling. Mathews County is not resisting petitioner's effort to complete construction of that building. It is petitioner's attempt to erect several new buildings on the site which are precluded by the ordinance that is in issue here. Petitioner attempts to have grandfathered seven additional condominium units that do not even exist, that have no sewage, soil or building permits, based on the County's issuance of a permit to construct one building, and on petitioner's assertion that by clearing and excavating a part of the entire tract surrounding these phantom units, he will have in good faith expended enough money so as to grandfather the entire tract for condominium use, and avoid the effect of the ordinance.

Some financial liabilities incurred by Mr. Wood were incurred while he knew that a zoning ordinance was being contemplated; others were incurred after passage of the ordinance and cannot be considered as a vested right entitled to any consideration; but, most importantly, none of the expended monies was invested in good faith reliance on a governmental act or omission.

The issuance of a single building permit, without more, cannot be the basis of a vested right to do more than build that building, and certainly not to build seven more new units. Whether Mathews County officials assumed, or even knew, that petitioner intended to further develop the entire tract is irrelevant, as that in no way led petitioner to detrimentally change his position. When petitioner began expending money on one building, he acquired no vested right to add to it to complete a 58-unit development, since he knowingly took a calculated risk in proceeding with excavation and was not relying in good faith on the nonadoption of the ordinance. The County had not been asked for, nor did it in any way give, permits,

licenses, approvals or anything other than the one building permit prior to the effective date of the ordinance. It cannot be charged with having led the developer on.

In *Todem Homes v. Board of Zoning Appeals*, 425 N.Y.S.2d 852 (1980), a developer's application to alter planned motel construction in accordance with subsequent plans which conflicted with a new zoning ordinance was refused. The court held that the developer's vested right to complete construction that commenced before the new zoning ordinance took effect did not include the right to amend the construction plan to add accessory uses permitted under the old ordinance but not permitted under the new ordinance without the necessity of complying with the new ordinance. The only right that vested by virtue of commencing construction pursuant to a valid building permit was the right to complete the project as authorized and not to add additional or different structures. That is precisely the case at bar.

The majority rule, which can be synthesized from the multitudinous decisions in this area, may be stated as follows: "A landowner will be held to have acquired a vested right to continue construction of a building or structure and to initiate and continue a use despite a restriction contained in an ordinance where, *prior to the effective date of the ordinance, in reliance upon a permit therefore validly issued*, he has, in good faith, made a substantial change in position in relation to the land, made substantial expenditures, or has incurred substantial obligations." (emphasis added) 3 A. Rathkopf, *Law of Zoning and Planning* ch. 37 at § 6.57-7 (3rd ed. 1972). Creeping grandfathering is not permitted.

Even if the petitioner was not relying on the building permit but on the fact that there was no zoning scheme when he purchased the tract of land, this cannot be a government omission which Wood could reasonably rely upon. As the Supreme Court of Virginia has stated, "property owners have no vested right to a continuation of the zoning applied to neighboring properties," and the "mere purchase" of land does not create a right to rely on existing zoning. *Town of Vienna Council v. Kohler*, 218 Va. 966, 976, 244 S.E. 542, 548 (1978).

In Virginia, as in most states, the existence of a valid building permit is still the principle benchmark

used by the courts to determine if a sufficient governmental act is present for the invocation of either the vested rights rule or the doctrine of equitable estoppel. If a valid permit had, in fact, been issued for the seven proposed by petitioner, it would be clear that Mathews County had approved the particular form of development or use at issue, and conversely, if no building permit has been issued, no vested right or estoppel can be claimed. *See Board of Supervisors of Fairfax County v. Medical Structures*, 213 Va. 355, 192 S.E.2d 799 (1972) (construction of nonconforming nursing home considered vested after issuance of special use permit, submission of bona fide site plan and substantial expenditures incurred in good faith) and *Board of Supervisors of Fairfax County v. Cities Service Oil Company*, 213 Va. 359, 193 S.E.2d 1 (1972) (petitioner's right to land use, described in a use permit vested upon the filing of a site plan that was diligently pursued with substantial expenses incurred in good faith).

In both *Medical Structures* and *Cities Service, supra,* the court recognized that in *urban* counties the approval of a site plan, rather than the issuance of a building permit, has become the key step in the development process. In both cases, the court held that when a developer has filed and diligently pursued an application for approval of a site plan and has expended substantial sums of money in reliance upon an existing zoning classification or building permit, the landowner acquires vested rights in the uses permitted under that permit or zoning classification. That is not the case here.

There is evidence in this case that petitioner on January 26, 1987, filed with the office of the county building official of Mathews an Erosion and Sediment Control Plan for seven of the buildings in the Chapel Creek Condominium project. This occurred almost ten days after public notice of hearings on the ordinance had been issued and only four days before the zoning ordinance became effective. Nevertheless, this could not be acted upon by the County until first approved by the U. S. Soil and Conservation Service.

A site plan depicting the entire layout of Chapel Creek was recorded in the Clerk's Office of Mathews County on January 29, 1987, the day the zoning ordinance was

adopted and the day before it became effective. However, none of these were acts of or by the county resulting in detrimental reliance by the petitioner. At the time of its filing, there was no requirement of filing or county approval of site plans in Mathews County.

The evidence in this case establishes that petitioner did not diligently pursue the project in good faith without knowledge that the new regulations would affect his expectations or plans. On the contrary, he hurriedly attempted to vest an entire condominium project because he knew his proposed buildings would not be a permitted use under the new ordinance. Moreover, petitioner can cite no governmental act, such as approval of a zoning request or the granting of a building permit, which he had a right to rely on. Finally, petitioner has not met his burden of proving that he has made substantial investments in pursuing development in reasonable reliance upon a governmental act.

Petitioner's evidence as to total expenditures incurred as of June 13, 1988, is not relevant. Good faith expenditures prior to January 29, 1987, when the ordinance was adopted is the relevant evidence but should be considered only in proportion to the cost of completion, which, given the scope and amenities proposed by petitioner, are minimal. The court has no way to determine that figure from the evidence.

In *Cotney v. Board of County Comrs.*, 140 So. 2d 877 (Fla. App. 1962), the court held that that portion of the work completed prior to the obtaining of the permit could not be given consideration in determining whether the property owner had acquired a vested right to complete construction in spite of a subsequently enacted zoning ordinance prohibiting his intended use of the property. Noting the property owner's contention that the pouring of a concrete slab and the erection of several courses of concrete block adjacent to their existing building prior to the adoption of the zoning ordinance gave them a vested right to complete the addition, the court stated that in order to come within the protection of such a rule, the construction must have been legally undertaken before the effective date of the zoning ordinance. *See also Donadio v. Cunningham*, 58 N.J. 309, 277 A.2d 375 (1971) (no right can arise as against a subsequent prohibitory

ordinance when the act relied upon took place prior to the issuance of a building permit), *Williams v. Deer Park*, 78 Ohio App. 231, 69 N.E.2d 536 (1946) (property owner did not have a vested right to construct buildings, despite the fact that basements had been excavated and footings completed prior to date of restrictive ordinance since owner had acquired building permit on the day prior to adoption of the ordinance, and no work or expense had been incurred under the permit). Other cases hold that construction expenses should not be considered in a vested rights evaluation when these expenses are incurred when the owner was fully advised that an ordinance restricting his proposed use was impending, the rationale of these cases being that such liabilities are not incurred in good faith. *Piper v. Meredith*, 110 N.H. 291, 266 A.2d 103 (1970) (where property owner expended money subsequent to learning of a zoning controversy, the property owner took a calculated risk in proceeding with the project and was not relying in good faith on the nonadoption of the ordinance). *Graham Corp. v. Board of Zoning Appeals*, 140 Conn. 1, 978 A.2d 564 (1953) (the hurried incurring of construction expenses in the two days immediately following the issuance of a foundation permit did not commend itself to any equitable consideration, the court adding that the difficulty in which property owner found himself on the matter of expense was one of his own deliberate choice).

In *Hawkinson v. County of Itasca*, 304 Minn. 367, 231 N.W.2d 279, a developer was not entitled to construct, over an excavation which had concrete walls and which was once used as a pond, a lodge with a dining room, kitchen, lounge, enclosed swimming pool and enclosed trout pond. The court said that it was aware of no authority which would permit the developer to expand an excavation with a concrete wall into a full-blown summer resort with a 32-unit motel attached, and that to permit such an expansion would violate the rule that nonconforming uses are to be restricted in a way conducive to their ultimate phasing out.

The court is not persuaded that the expenditures made by the petitioner were all made in good faith, nor is the court persuaded that they are substantial in proportion to the cost of completion of Chapel Creek. Excluding

the acquisition price of the land, as is proper, *Piper v. Meredith* and *Hawkinson, supra,* and disregarding those portions of petitioner's $721,102 figure that were incurred after January 30, 1987, or before then, but with knowledge that a zoning restriction was imminent, the court finds it impossible to believe that the reduced figure (reflecting those expenditures that were incurred in good faith and are legally proper) constitutes a substantial sum in relation to the cost of constructing seven new buildings, installing amenities like docks and tennis courts, and providing the public access and landscaping necessary to a condominium project of this magnitude. Petitioner has simply not met his burden of proving that the Board's findings were "plainly wrong" or that he has incurred substantial liabilities in good faith reliance on a governmental act so as to permit him to build in violation of the Mathews County ordinance.

In conclusion, the court finds that the requisite governmental act, such as the issuance of a building permit, is conspicuously absent from petitioner's claim. The court further finds that petitioner's conduct in filing a site plan does not constitute good faith conduct, since he was aware that the ordinance was imminent and hurriedly moved to vest an entire tract of development on the basis of submission of preliminary plans.

The court concludes that petitioner's evidence of expenditures are to be considered only to the extent that they reflect substantial and good faith investments prior to January 30, 1987. Petitioner has not met his burden of establishing that he made substantial investments in pursuing the development in reasonable reliance on a governmental act, nor has he proved that his expenditures are substantial in relation to the cost of completing Chapel Creek. Since the court finds that petitioner has acquired no rights to additional building permits, it is unnecessary to consider whether his rights were substantial enough as to make it unfair to allow the government to infringe those rights. Petitioner has failed to establish that the board's decision was contrary to law or plainly wrong. In light of the foregoing, an order will issue this same day affirming the decision of the Mathews County Board of Zoning Appeals.