Roger **WERMAGER** and Lola Wermager, Appellants,

v.

**CORMORANT TOWNSHIP BOARD, Respondents.**

No. 82–1732.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1983.

Decided Sept. 23, 1983.

Carlson Law Office, Jay D. Carlson, Fargo, N.D., for appellants.

Benshoof, Hummel, Sinclair, Schurman, Pearson, & Evans, P.A., John E. Pearson, Detroit Lakes, Minn., for respondents.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and ROBERTS, District Judge.*

* The Honorable Ross T. Roberts, United States District Judge for the Western District of Missouri, sitting by designation.

ROSS T. ROBERTS, District Judge.

This is an action brought under the aegis of 42 U.S.C. § 1983, in which Roger and Lola Wermager seek declaratory and injunctive relief in respect of a zoning ordinance adopted by defendant Cormorant Township Board ("the Township"). Their claim is based upon assertions that the ordinance in question is arbitrary and capricious and hence invalid; that it cannot lawfully be applied to their property in any event, since they have a "vested" right to the land use which the ordinance would prohibit; and that if the ordinance were to be applied to their property it would represent a "taking" thereof without compensation. Ruling upon the parties' cross motions for summary judgment, the District Court rejected those claims and entered judgment in favor of the Township. We affirm.

A relatively brief factual resume will suffice. In 1968 the Wermagers (husband and wife), together with Mr. Wermager's brother, purchased a tract of land, approximately 106 acres in size, located on Big Cormorant Lake in Cormorant Township, Becker County, Minnesota.[1] The land was at that time in use for agricultural purposes, and was unburdened by any zoning ordinance or other land use restriction.

In 1970 and 1971 the Wermagers platted a total of 23 lots along the shore of the lake, each such lot being less than one acre in size. A number of those lots have been sold, and 17 private homes have been constructed thereon. At the present time approximately 90 acres of the original tract remain in use for agricultural purposes and are unplatted. The instant controversy involves the use of a portion of those 90 acres.

In 1971, the Cormorant Lakes Watershed District (apparently an entity not directly associated with the Township) inquired of the Wermagers concerning the possibility of their cooperation in a proposed model sewage disposal facility to be located on their land. The Wermagers agreed to construction of the system, which was to be financed in part by federal and state grants and in part by special assessments against the land. As ultimately effected, following construction of the sewer, those special assessments have been computed on the basis of the frontage feet of sewer along both the already platted lakefront lots and the unplatted land which adjoins, and have led to a total expenditure of $11,561 by the Wermagers. In addition, the Wermagers have donated three acres of their land for placement of the sewage lagoon and drainage field. As constructed, the sewer system has the capacity to service approximately 50 one acre lots.

Several years later, on April 28, 1977, the Township enacted the general zoning ordinance in question. The primary thrust of the ordinance, as pertinent here, is to require that any lot more than 300 feet from the high water mark of a lake be no less than five acres in size. This has not only had the practical effect of limiting the number of lots the Wermagers might otherwise be able to plat and sell within their remaining 90 acres, but has also reduced that number to well below the number of lots which could be served by the aforementioned sewer system on the property. According to the Wermagers, all of this has had the effect of reducing the value of their unplatted land from approximately $450,000 to $300,000. Their various requests for a variance have been uniformly denied by the Township.

The Wermagers raise three points on appeal: (a) that the District Court erred in basing its ruling, in part, upon certain adverse inferences or conclusions which it drew in connection with the Wermagers' intentions for the use of their land; (b) that the District Court erred in upholding the validity of the ordinance when the record before it contained no affirmative proof upon which to base a finding as to the reasonableness of the ordinance; and (c), that the District Court erred in holding that the Wermagers did not have a "vested" right in the land use which the ordinance prohibits. The Wermagers' originally pleaded assertion that an application of the

---

1. The Wermagers subsequently purchased Mr.     Wermagers' brother's interest in the land.

ordinance would represent a "taking" of their property without compensation, in violation of the Fifth and Fourteenth Amendments, has not been raised or argued in this Court.

The Wermagers' first point concerns the fact that the District Court based its decision in part upon a finding that they had never had any clearly developed intention to develop and plat the 90 acres in question. It is asserted, in that connection, that the court improperly utilized certain less-than-clear passages from Mr. Wermager's deposition for the purpose of drawing unfavorable inferences or conclusions on that subject, contrary to established summary judgment procedure. The Township suggests, on the other hand, that although the matter came before the court on cross motions for summary judgment, the court was entitled, under the circumstances, to deal with the issues on the merits, as if the case had been submitted on a stipulated record.

■ The Wermagers are of course correct that, as parties opposing the Township's motion for summary judgment, they were entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record. *St. Louis County Bank v. U.S.,* 674 F.2d 1207, 1209 (8th Cir.1982); *Sommers v. Budget Marketing, Inc.,* 667 F.2d 748, 749–50 (8th Cir.1982); *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979). They are likewise correct in suggesting that where conflicting inferences as to a material fact may reasonably be drawn from the materials before the court, the case is not appropriate for summary judgment. *Peterson v. Lehigh Valley Dist. Council, Etc.,* 676 F.2d 81, 84 (3d Cir.1982); *Londrigan v. Federal Bureau of Investigation,* 670 F.2d 1164, 1171 n. 37 (D.C.Cir. 1981); *Schwabenbauer v. Board of Ed., Etc.,* 667 F.2d 305, 313 (2d Cir.1981). And they are clearly correct in their position that the filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits. *U.S. v. Porter,* 581 F.2d 698, 703

(8th Cir.1978); *Allied Mutual Co. v. Lysne,* 324 F.2d 290, 292 (8th Cir.1963); *and see* 10 *Wright, Miller and Kane, Federal Practice and Procedure* § 2720 (2d ed. 1983). We need not pause long over the matter, however, even if the District Court may be thought to have transgressed these principles, since we believe, for reasons developed in more detail below, that the factual inferences the court drew were unnecessary to a proper resolution of this matter and that a summary judgment in favor of the Township was appropriate even without them.

■ In support of their argument that the District Court erred in sustaining the validity of the ordinance, the Wermagers point out that the only evidence of record relating to the reasonableness of the ordinance is to the effect that "the ... Board did not rely on any particular study or report in enacting the five acre minimum lot size requirement for Cormorant Township." They urge, on that basis, that a judgment *upholding* the ordinance would not only lack any predicate, but in fact would be contrary to the only evidence on the subject. We note, however, that the ordinance clearly represents an exercise by the Township of its police powers. The ordinance is accordingly entitled to a rebuttable presumption of constitutional validity, with the burden of showing unreasonableness being cast upon those who urge that proposition. See *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 595–96, 82 S.Ct. 987, 990–91, 8 L.Ed.2d 130 (1962), and cases cited therein. Such presumptions are entitled to as much force and effect under summary judgment procedure as elsewhere; and thus if the undisputed facts and relevant presumptions are such that the moving party would be entitled to a directed verdict at trial, he will be entitled to a summary judgment under Rule 56, unless the opposing party offers evidence of a substantial character rebutting the presumption or presents good reasons, in accordance with Rule 56(f), for a failure to offer such evidence. *United States v. General Motors Corporation,* 518 F.2d 420, 441–42 (D.C.Cir. 1975); *10–A Wright, Miller and Kane, su-*

pra § 2727; 6 *Moore's Federal Practice* § 56.11[10] (2d ed. 1982). Since we do not view the Township's mere lack of reliance upon some particular study or report as equating to evidence of a substantial character which demonstrates the unreasonableness of the ordinance, and since, more importantly, the Wermagers offered no suggestion pursuant to Rule 56(f) that they wished to present or, develop further evidence on the subject, we conclude that a summary judgment on the matter in favor of the Township was appropriate.

As a final point, the Wermagers argue that the construction of their sewer system some five or six years before adoption of the ordinance, their donation of land, and their expenditures in connection therewith, gave them a "vested" interest in the land usage which the ordinance would prohibit (platting of the nonlakeshore area in lots smaller than five acres in size), or at least that a summary judgment in the Township's favor on the matter could not properly have been granted.[2] It is to this point that the Wermagers direct their complaint regarding the District Court's use of an unfavorable inference, since in ruling the issue the court appears to have relied, at least to some extent, upon a finding that the Wermagers had "no clear plans for development of the nonlakeshore lots" at the time the sewer system was proposed and constructed. As mentioned previously, however, we do not believe this finding with respect to the Wermagers' intentions was critical to a proper resolution of the point. Indeed, we believe the same result would be reached even if the opposite finding were made.

■ As developed under Minnesota case law, a party may challenge the applicability of a zoning ordinance or restrictive land use regulation if he has a pre-existing "vested" right or interest in the land use which would be prohibited by the ordinance or regulation. See *Ridgewood Development Co. v. State,* 294 N.W.2d 288, 294 (Minn.1980). According to the latest pronouncement of the Minnesota courts on the subject, the focus of the inquiry is "whether a developer has progressed sufficiently with his construction to acquire a vested right to complete it." It is said in this connection that "the mere possession of a building permit, the incurring of some expense and the assumption of obligations preliminary to construction, such as excavation, create no vested right," nor do "expenditures associated with acquisition of the property, the removal of trees, [or] the grading of land . . . ." *Id.* It will thus be seen that while a developer's intentions may be relevant— since an understanding of what development was intended will ordinarily be essential to determining how far the development has progressed—the dispositive issue is simply the extent to which the physical aspects of the project, or at least binding commitments therefor, have gone forward. See *Hawkinson v. County of Itasca,* 304 Minn. 367, 231 N.W.2d 279, 283 (1975).

■ Here, even if it be found that the Wermagers had *always* intended to develop *all* of their land into lots less than five acres in size, the actual implementation of those plans had clearly not reached such a stage as to create a "vested" right in the continuation thereof. The Wermagers had not platted the area in question; no roads had been constructed or utilities laid which were peculiar to a development with lots less than five acres in size; and apparently no lots had been sold or contracted for sale in the nonlakeshore area. The land in question was (and is) still in use for agricultural purposes. Indeed, the Wermagers do not seriously suggest the existence of any physical step in the implementation of their plans, except for construction of the sewer system.[3] Given the fact that that sewer

2. Whether the "vested" rights doctrine as developed under Minnesota law can be equated with "rights, privileges or immunities secured by the Constitution and laws," for purposes of an action under 42 U.S.C. § 1983, is a subject we need not address since the Township has

not raised the point and since the District Court would presumably have been entitled to deal with the subject as a pendent claim in any event.

3. The Wermagers appear to argue, in effect, that completion of the sewer itself represents a

system can function as well for five acre lots as for smaller lots—albeit with some potential overcapacity—we conclude, under Minnesota law, that the Wermagers do not have any "vested" right which can serve to prevent an application of the ordinance in question. Compare *Ridgewood Development Co. v. State, supra; Hawkinson v. County of Itasca, supra; State ex rel. Berndt v. Iten,* 259 Minn. 77, 106 N.W.2d 366 (1960).

The judgment below is affirmed.

completion of the development. This mistakes the ultimate issue involved. The question is not whether the Wermagers have a "vested" right to complete the sewer; the sewer *has* been completed, and the ordinance does not address that subject in any event. The issue, rather, is whether the Wermagers have progressed so far in the development of their non-lakeshore property into lots of less than five acres in size that they may be said to have a "vested" right to complete that development.