CONCEPT PROPERTIES,
LLP, Appellant,

v.

CITY OF MINNETRISTA, Respondent.

No. A04–1414.

Court of Appeals of Minnesota.

April 19, 2005.

Robert B. Bauer, Kristine K. Nogosek; Severson, Sheldon, Dougherty & Molenda, P.A., Apple Valley, MN, for appellant.

George C. Hoff, Justin L. Templin; Hoff, Barry & Kuderer, P.A., Eden Prairie, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; WRIGHT, JUDGE; and CRIPPEN, Judge.*

## OPINION

WRIGHT, Judge.

This dispute arises from a series of land-use decisions by respondent City of Minnetrista (the City), which resulted in removing appellant's land from the Metropolitan Urban Services Area (MUSA) and staging its inclusion in the MUSA after 2020. Appellant Concept Properties, LLP, sued the City after the City rejected appellant's attempts to have the property returned to the MUSA at an earlier date and rezoned for residential development at urban densities. The district court entered summary judgment for the City.

On appeal, appellant argues that summary judgment was erroneously entered because the City acted arbitrarily (a) in staging the land for MUSA inclusion after 2020 as part of its 1998 comprehensive plan revisions when the land was formerly part of the MUSA; and (b) in denying appellant's application to have the land returned to the MUSA and rezoned for development at urban densities. Appellant also argues that removing the property from the MUSA after collecting a sewer assessment from a former owner of the property (a) violates appellant's vested right to connect to the city sewer; (b) is barred under the doctrine of equitable estoppel; (c) constitutes an unconstitutional taking, in violation of Minn. Const. art. 1, § 13; and (d) deprives appellant of substantive due process of law. Finally, appellant argues that the City failed to comply with Minn.Stat. § 15.99 (2002), thereby warranting automatic approval of appellant's rezoning application. We affirm.

## FACTS

The parties agree that the facts are undisputed. Appellant Concept Properties owns approximately 48.7 acres of real property located at the southwest corner of Halstead Drive and County Road 110W (the subject property) in the city of Minnetrista.

In 1975, a former owner of the subject property paid a $28,020 sewer assessment to the City for sanitary sewer trunk improvements as part of a project designed to expand and improve the sanitary sewer system in the area west of Lake Minnetonka for future development. The City assessed all properties that were then in the MUSA because these properties were anticipated to have sewer availability within the next 20 years. The City, however, did not permit all properties to connect to the

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

sewer upon payment of the assessment. Rather, the benefit conveyed by the assessment was the property's proximity to the sewer.

The MUSA is the designated portion of the metropolitan area in which governmental agencies support urban development by providing necessary public facilities and services, including sewer service. The subject property was represented to be in the MUSA in 1975 and again in the City's 1981 Comprehensive Land Use Plan. In the mid–1980s, however, the City's MUSA was reduced to meet requirements set by the Metropolitan Council. The 1992 comprehensive plan indicates that the subject property was zoned Residential Agriculture (RA), was "guided for rural use," and was part of a "sewer-benefited area."[1] The record is unclear as to exactly when the subject property was removed from the MUSA, but as of January 27, 1998, the subject property was no longer within the MUSA.

In 1995, the Minnesota Legislature passed a law requiring all cities to update their comprehensive plans by the end of 1998. 1995 Minn. Laws ch. 176, § 9 (codified at Minn.Stat. § 473.864, subd. 2 (2004)). In 1997, the City began the process of updating its comprehensive plan. As part of this process, Wara Real Estate, the then owner of the subject property, asked the City Planning Commission to stage the subject property for inclusion in the MUSA in 1998. At a planning commission meeting on March 30, 1998, the Planning Commission noted, however, that the subject property was not slated for MUSA inclusion or residential develop-

ment at urban densities until 2005. At the meeting, the Planning Commission voted 5 to 1 to delay urban development of the subject property until 2010, reasoning that inclusion of the subject property in the MUSA at an earlier date would be "too much, too soon." During its June 15, 1998 meeting, the City Council concurred with the Planning Commission and designated the subject property "MUSA 2010–2015." The City Council also decided that the subject property would retain its current RA zoning classification, which requires a minimum lot size of three acres.

The City Council adopted its 1998 comprehensive plan on June 29, 1998, subject to Metropolitan Council review. *See* Minn. Stat. § 473.858, subd. 1 (2004) (requiring city to submit completed comprehensive plan to Metropolitan Council for review). The Metropolitan Council rejected the City's comprehensive plan, however, because it did not comport with the regional plan for the seven-county metropolitan area. The Metropolitan Council directed the City to revise the comprehensive plan to designate an "urban reserve" area and implement corresponding zoning ordinances.

The Metropolitan Council also required the City to reduce the MUSA's rate of expansion because "the plan called for a MUSA more than double what would be needed to accommodate the forecasts." Thus, at the direction of the Metropolitan Council, the City rezoned the subject property, along with approximately 75 other parcels, as an urban reserve area and redesignated it "beyond 2020 MUSA." As

---

**1.** Concept Properties contends that the subject property was within the MUSA in 1992. The record does not include a complete copy of the 1992 comprehensive plan and does not contain other documentation establishing that the subject property was within the MUSA in the early 1990s. To support its contention,

Concept Properties relies on the City's admission that, in 1992, the subject property was located in a "sewer-benefited area." This does not mean that the subject property was within the MUSA, however. A property in close proximity to the sewer is considered "sewer-benefited."

part of the urban reserve area, the subject property is a staged development district (SDD), which requires a minimum lot size of ten acres, instead of the former three-acre minimum. As a result, the subject property cannot be developed for single-family residential use at urban densities until after 2020.

On April 22, 1999, the Commission held a public meeting to discuss the MUSA adjustments. Although notice of the meeting was sent to Chuck Alcon at Wara Real Estate and published in the local paper, no representative for the subject property attended the meeting. The City Council adopted the final comprehensive plan on May 17, 1999.

In October 1998, in the midst of the City's revision of the comprehensive plan to incorporate the regional policies outlined by the Metropolitan Council, Concept Properties purchased the subject property from Wara Real Estate. Prior to Concept Properties' purchase, the City represented to Concept Properties that, based on the comprehensive plan, the subject property would be included in the MUSA in 2005, without advising Concept Properties that the comprehensive plan would be undergoing further revisions.

In March 2002, after Concept Properties learned that it could not develop the subject property for single-family residential use until after 2020, Concept Properties submitted an application to the City to amend the comprehensive plan by placing the subject property in the MUSA. Concept Properties also requested that the subject property be rezoned from a SDD to a medium-density single-family residential district (R2), which would permit a 20,000–square–foot lot minimum rather than a 10–acre minimum.

The city engineer reviewed Concept Properties' application and determined that "adequate infrastructure appeared to be in place" but a water tower would be necessary to serve the property. On April 22, 2002, the Planning Commission held a public hearing on the application. Members of the public voiced numerous concerns about developing the subject property, citing drainage, density, traffic, and safety issues. The Planning Commission voted to grant Concept Properties' request to include the subject property in the MUSA, but it denied the rezoning request.

In May 2002, the City Council held additional public meetings on the application, at which the public raised similar concerns about increased density. Concept Properties granted the City several written extensions of the 60–day statutory deadline for zoning-application decisions to facilitate further research and additional consideration of the application. May 27, 2003, was the final deadline. The City Council resumed discussion of the application at its meeting on March 3, 2003, during which the mayor, council members, and landowners debated the merits of Concept Properties' application.

On May 5, 2003, after more discussion, the City Council denied Concept Properties' requests by oral vote of 3 to 2. A resolution with formal findings of denial was issued on May 19, 2003, in conjunction with a vote of 5 to 0 to deny the application.

In denying Concept Properties' application, the City found in pertinent part that (1) the SDD zoning designation was consistent with the subject property's status as "urban reserve" according to the comprehensive plan, and R2 zoning would be inconsistent with the comprehensive plan; (2) there was no compelling reason to amend the comprehensive plan; and (3) the City could not serve the subject property, if developed as requested, with an adequate supply of water for fire protec-

tion services unless the City constructed an additional water tower, which was not provided for in its capital improvement plan. On May 27, 2003, the City mailed a copy of the findings to Concept Properties' representative.

Concept Properties brought an action in district court, alleging that the City's decisions to shift the subject property to the "beyond 2020" MUSA category in the comprehensive plan and to deny its subsequent request to place the subject property back in the MUSA were arbitrary and capricious. Concept Properties also alleged that, by assessing the subject property for sewer improvements in 1975 and later removing the property from the MUSA, the City denied it procedural and substantive due process, impermissibly took property without just compensation, violated its vested right to connect to the sewer, and denied it equal protection of the law. Concept Properties further alleged violations of Minn.Stat. § 15.99 (2002). After the City filed notice to remove the action to federal court, Concept Properties voluntarily dismissed its federal constitutional claims.

The City moved for partial summary judgment on the issue of the City's compliance with Minn.Stat. § 15.99, which was granted. The City and Concept Properties later filed cross-motions for summary judgment on Concept Properties' remaining claims, and the district court granted summary judgment in favor of the City. This appeal followed.

## ISSUES

I. Was respondent-City's decision, as part of its comprehensive plan revisions, to designate the subject property for inclusion in the MUSA after 2020 arbitrary and capricious?

II. Was respondent-City's reliance on its comprehensive plan a sufficient legal basis for its decision to deny appellant's application to revise the MUSA to include the subject property and to rezone the subject property to allow 20,000–square–foot lots?

III. Does appellant possess a vested right to connect to the city sewer based on a prior landowner's payment of an assessment for sewer improvements?

IV. Is respondent-City estopped from denying a request for the subject property to be included in the MUSA when respondent-City collected a sewer assessment from a prior landowner for sewer improvements?

V. Did respondent-City impermissibly take appellant's property without just compensation by designating the subject property for inclusion in the MUSA after 2020, when a sewer assessment had been paid?

VI. Did respondent-City violate appellant's right to substantive due process by designating the subject property for inclusion in the MUSA after 2020, when a sewer assessment had been paid?

VII. Did respondent-City violate Minn. Stat. § 15.99, subd. 2 (2002), by failing to state the reasons for denial at the time of its oral decision to deny a rezoning application and by failing to send the subsequent written findings of denial to appellant before the deadline for the decision?

## ANALYSIS

On appeal from summary judgment, we determine whether any genuine issues of material fact exist and whether the district court erred as a matter of law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990). In doing so, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Summary judgment

is appropriate when a party fails to make a showing sufficient to establish the existence of an element essential to the party's case, *Bersch v. Rgnonti & Assocs., Inc.,* 584 N.W.2d 783, 786 (Minn.App.1998), *review denied* (Minn. Dec. 15, 1998), or when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## I.

Concept Properties argues that the following three decisions of the City were arbitrary and capricious: (a) adopting the 1998 comprehensive plan, which designated the subject property for inclusion in the MUSA after 2020; (b) denying the request to reinstate the subject property in the MUSA; and (c) denying the request to rezone the subject property for development at urban densities.

## A.

In challenging the City's 1998 comprehensive plan, Concept Properties argues that the City's decision to designate the subject property for inclusion in the MUSA after 2020 was unjustified in light of the subject property's prior inclusion in the MUSA. Although property owners rarely challenge a decision made in the process of creating a comprehensive plan, this is a cognizable challenge. *Hay v. City of Andover,* 436 N.W.2d 800, 805 (Minn. App.1989) (reviewing challenge to comprehensive plan decision); *cf. Sun Oil Co. v. Village of New Hope,* 300 Minn. 326, 334–35, 220 N.W.2d 256, 261 (Minn.1974) (reasoning that, where a city's refusal to rezone was based on a comprehensive zoning ordinance, it was proper to attack the com-

prehensive ordinance as arbitrary and capricious).

■ Citing *Sun. Oil Co.,* Concept Properties contends that the City must demonstrate a mistake in the subject property's prior MUSA designation to justify its decision to designate the subject property as beyond 2020 MUSA in the City's 1998 comprehensive plan. Because the City failed to demonstrate a mistake, Concept Properties argues, the City acted arbitrarily in changing the MUSA designation as part of the comprehensive plan update.

■ Concept Properties, however, ignores the fundamental tenet that a municipality acts in a legislative capacity under its delegated police powers when it adopts or amends a zoning ordinance or adopts a comprehensive plan. *Sun Oil Co.,* 300 Minn. at 333, 220 N.W.2d at 261. Contrary to Concept Properties' novel interpretation of *Sun Oil Co.,* the Minnesota Supreme Court in *Sun Oil Co.* sets forth the difficult standard that a private party must meet in order to challenge a municipality's land-use decisions. *Id.* Because municipal bodies have broad discretion in making zoning and land-use decisions, they have no obligation to demonstrate that prior zoning classifications are mistaken. *See id.* ("The courts will reverse [zoning decisions] only where there are no grounds for reasonable debate and where the action of the [municipal body] is arbitrary, capricious, discriminatory, or illegal." (Quotation omitted)); *see also Wedemeyer v. City of Minneapolis,* 540 N.W.2d 539, 542 (Minn.App.1995) (recognizing Minnesota's long history of acknowledging right of municipalities to exercise police powers by regulating land use and development). Concept Properties' contention that the City must demonstrate a mistake in a former MUSA designation to justify approval of a new comprehensive plan with a different MUSA designation is a bald misinter-

pretation of the standard of review employed in zoning cases.

■■■ Applying the proper standard of review, we must determine whether the City's decision, as part of its 1998 comprehensive plan revisions, to defer the subject property's inclusion in the MUSA until after 2020 had a rational basis. *Hay*, 436 N.W.2d at 805; *see also Kehr v. City of Roseville*, 426 N.W.2d 233, 235 (Minn.App. 1988), *review denied* (Minn. Sept. 16, 1988) (applying "reasonable-basis" test to all zoning-related actions). Land-use decisions made during the creation of a comprehensive plan, like decisions to later grant or deny a proposed land use, are legislative actions entitled to judicial deference. *Sun Oil Co.*, 300 Minn. at 333–34, 220 N.W.2d at 261. This deferential standard of review reflects a policy that the governmental body is in the best position to assess what zoning schemes best serve the public. *Larson v. County of Washington*, 387 N.W.2d 902, 905 (Minn.App.1986), *review denied* (Minn. Aug. 20, 1986).

■■■ Given the broad discretion of local officials in land-use decision-making, we will reverse only when a decision lacks a rational basis or the city's actions are "arbitrary, capricious, discriminatory, or illegal." *Sun Oil Co.*, 300 Minn. at 337, 220 N.W.2d at 263. We conduct an independent review of the municipal record without deference to the district court's determinations. *Larson*, 387 N.W.2d at 906.

Although Minnesota caselaw does not specifically address when a city's land-use decision to change a property's MUSA designation is arbitrary or capricious, in *Manke Lumber Co. v. Central Puget Sound Growth Mgmt. Hearings Bd.*, the Washington Court of Appeals rejected an argument that a former characterization of a parcel as an Urban Growth Area compels the same characterization in a subsequent comprehensive plan. 113 Wash.

App. 615, 53 P.3d 1011, 1018–19 (2002). With deference to a local government's broad discretion in developing comprehensive plans to fit local conditions, the *Manke Lumber Co.* court determined that the county's selection and alteration of Urban Growth Area locations was not arbitrary and capricious. *Id.* at 1017.

Here, in revising its comprehensive plan pursuant to the Minnesota Legislature's statutory mandate, the City Council was formulating land-use policy, a particularly legislative function that warrants significant deference. Development of the comprehensive plan was predicated on numerous hearings and deliberations before submitting the draft comprehensive plan to the Metropolitan Council for review. Local residents, interested citizens, a representative of the subject property, members of the Planning Commission, city council members, and the mayor took part in the decision-making process. The City Council and the Planning Commission specifically discussed the subject property at several public meetings held on March 30, April 20, May 18, June 2, and June 15, 1998. On March 30, 1998, the planning commission determined that it would be "too much, too soon" to place the subject property in the MUSA any earlier than 2010 because of a lack of available water and a commitment to preserving the City's rural character. At an April 23, 1998 City Council work session, city council members agreed, recommending to stage the subject property for inclusion in the MUSA no earlier than 2010 or 2015. On June 15, 1998, the City Council concurred and designated the subject property "2010–2015 MUSA."

■■ A lack of resources and a policy determination to curtail urban sprawl are reasonable bases on which to make land-use decisions. Moreover, earlier inclusion

of the subject property in the MUSA does not preclude the City from removing the property from the MUSA at a later date. *See Manke,* 53 P.3d at 1018–19. Our review of the municipal record establishes that the City's decision to designate the subject property "2010–2015 MUSA" was a reasonable land-use decision that was neither arbitrary nor capricious.

After designating the subject property "2010–2015 MUSA" in its comprehensive plan, the City submitted the plan to the Metropolitan Council for review, as required by law. *See* Minn.Stat. § 473.858, subd. 1 (2004) (requiring city to submit completed comprehensive plan to Metropolitan Council for review); *see also City of Lake Elmo v. Metro. Council,* 685 N.W.2d 1, 4 (2004) (discussing purpose of Metropolitan Council as coordinator of long-term land-use development to prevent urban sprawl).

The Metropolitan Land Planning Act (MLPA) requires increased coordination between the Metropolitan Council and local governmental units within the Twin Cities metropolitan area.[2] *City of Lake Elmo,* 685 N.W.2d at 5. Accordingly, the Metropolitan Council is required to review the comprehensive plans of local governmental units "to determine their compatibility with each other and conformity with metropolitan system plans." Minn.Stat. § 473.175, subd. 1 (2004). If the Metropolitan Council determines that a comprehensive plan may have a "substantial impact on" or "contain a substantial departure from metropolitan system plans," the Metropolitan Council may require a locality to modify its comprehensive plan to conform with the Metropolitan Council's regional policies. *Id.*

When the City submitted its 1998 comprehensive plan to the Metropolitan Council for review, the Metropolitan Council refused to accept the City's plan unless and until the City reduced its MUSA and created an "urban reserve" area to comply with the Metropolitan Council's regional land-use plan. The purpose of the "urban reserve" zoning designation is to preserve properties with large acreage until urbanization actually occurs. Working with the Metropolitan Council to achieve compliance, the City adjusted its comprehensive plan so that all properties set for MUSA inclusion after 2010, including the subject property, would not be included in the MUSA until at least 2020. At the direction of the Metropolitan Council, the City rezoned all of these "beyond 2020 MUSA" properties as staged development districts for the purpose of preserving properties with larger acreage until urbanization actually occurs. Although the City held a public meeting on these MUSA changes, no representative of the subject property attended the meeting.

It is apparent from the record that the rationale for the City's decision to change the subject property from 2010–2015 MUSA to "beyond 2020 MUSA" was based entirely on achieving necessary conformity with the Metropolitan Council's regional policies. The City is required to submit its comprehensive plan to the Metropolitan Council for review and the Metropolitan Council is granted authority to demand that the comprehensive plan conform to its regional land-use plan. Thus, the City's decision to amend its comprehensive plan to comport with directives from the Metropolitan Council was not arbitrary or capricious.

2. "Metropolitan area" is defined in Minn. Stat. § 473.121, subd. 2 (2004), and, with the exception of four cities (Northfield, Hanover, New Prague, and Rockford), consists of seven counties—namely Anoka, Carver, Dakota, Hennepin, Ramsey, Scott, and Washington.

 Concept Properties also argues that the City erred in failing to make specific written findings in support of its decision. Concept Properties is correct that ordinarily municipalities prepare contemporaneous findings to support a zoning decision. *See Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416 (Minn.1981) (observing that municipality at minimum should reduce basis for zoning decision to writing); *R.A. Putnam & Assocs., Inc. v. City of Mendota Heights*, 510 N.W.2d 264, 267 (Minn.App.1994) (considering whether municipality provided contemporaneous rationale for zoning decision), *review denied* (Minn. Mar. 15, 1994). The *Honn* court acknowledged that a city council usually does not make complete records of their proceedings, but concluded that the city council must reduce to writing the reasons for its decision in more than a conclusory fashion. 313 N.W.2d at 415–16. But municipalities generally are not required to articulate reasons for enacting an ordinance. *Arcadia Dev. Corp. v. City of Bloomington*, 552 N.W.2d 281, 289 (Minn. App.1996), *review denied* (Minn. Oct. 29, 1996).

Here, Concept Properties is not challenging a specific zoning decision. Rather, it is challenging the City's adoption of a comprehensive land-use scheme for the next 50 years. This action is more analogous to enacting an ordinance than to making a particular zoning decision. Requiring the City to make written findings regarding the MUSA status for each parcel in the entire city would place an inordinate burden on the municipality.

In sum, the municipal record establishes that the City's decision to defer inclusion of the subject property in the MUSA until after 2020 has a rational basis. Acting in its legislative capacity, the City engaged in an extensive and deliberative decision-making process, which led to revision of the comprehensive plan to meet statutorily required compliance with the Metropolitan Council's regional plan. Summary judgment was properly entered in favor of the City on this ground.

**B.**

 Having concluded that it was not arbitrary or capricious for the City to revise its 1998 comprehensive plan to designate the subject property for inclusion in the MUSA after 2020, we next consider whether it was arbitrary or capricious for the City to deny Concept Properties' application to amend the comprehensive plan and rezone the subject property R2 for development at urban densities.

 We review the municipal record to determine whether a rational basis supports a city's decision to deny an application to rezone. *SuperAmerica Group, Inc. v. City of Little Canada*, 539 N.W.2d 264, 266 (Minn.App.1995), *review denied* (Minn. Jan. 5, 1996). The challenger bears the burden of demonstrating that the most recent land-use decision was unreasonable. *Sun Oil Co.*, 300 Minn. at 335, 220 N.W.2d at 262 (requiring a showing "that there was some mistake in the original zoning or that the character of the neighborhood had changed to such an extent that reclassification ought to be made"). We also review a city's refusal to amend a comprehensive plan under a rational-basis standard. *BBY Investors v. City of Maplewood*, 467 N.W.2d 631, 635 (Minn.App.1991), *review denied* (Minn. May 23, 1991). Thus, we consider whether the City's decision to deny Concept Properties' request to amend the comprehensive plan lacked a rational basis or whether the city's stated reasons for denying the application are legally insufficient or unsupported by the record. *Hubbard Broad., Inc. v. City of Afton*, 323 N.W.2d 757, 763 (Minn.1982).

In support of its decision, the City found that rezoning the subject property from SDD (requiring a ten-acre lot minimum) to R2 (requiring a 20,000–square–foot lot minimum) would be "inconsistent with the comprehensive plan." The City also found that there was no compelling reason to amend the comprehensive plan to reinstate the subject property in the MUSA.

Concept Properties contends that, by merely relying on the comprehensive plan, the City lacked a sufficient legal basis to deny its application. This argument is without merit. The Minnesota Supreme Court has specifically held that when a municipality refuses to rezone because it would be inconsistent with its comprehensive land-use plan, that action does not, "without evidence to the contrary, constitute arbitrary or capricious action on the part of the [city] council." *Sun Oil Co.*, 300 Minn. at 337, 220 N.W.2d at 263; *see also Amcon Corp. v. City of Eagan*, 348 N.W.2d 66, 75 (Minn.1984) (holding that refusal to zone in accordance with comprehensive plan is evidence that city's action was arbitrary). Moreover, the Minnesota Legislature has directed that municipalities refrain from making land-use decisions that deviate from their comprehensive plans. *See* Minn.Stat. § 473.865, subd. 2 (2004) (requiring municipality not to adopt zoning that conflicts with its comprehensive plan). Indeed, the decision to rely on a comprehensive plan when considering a rezoning request guards against arbitrary and capricious action by serving as a hedge against "special interest, irrational ad hocery." *Town of Bedford v. Vill. of Mt. Kisco*, 33 N.Y.2d 178, 351 N.Y.S.2d 129, 306 N.E.2d 155, 159 (1973).

The City's comprehensive plan specifically placed the subject property in the urban reserve and zoned the property SDD. The comprehensive plan is "Minnetrista's official statement and document used to make short and long range planning decisions, including those related to subdivisions, zoning changes . . . neighborhood and rural plans and amendments to the Plan itself." The plan makes clear that "growth and expansion of the MUSA shall be accomplished in accordance with the City's Growth Strategy—Staged Development Plan" and that extension of the MUSA will be allowed only "when the area can be served with sewer and the extension is consistent with the Growth Strategy." The plan also sets forth the City's land-use goals, including "[p]reserv[ing] Minnetrista's rural character" and "[p]rotect[ing] and preserv[ing] agriculture/rural qualities."

Both objectives sought by Concept Properties are inconsistent with the City's policies of preserving the City's rural character and preventing urban sprawl. As such, a legally sufficient rationale supports the City's denial of Concept Properties' application to amend the comprehensive plan and rezone the subject property. *See Sun Oil Co.*, 300 Minn. at 337, 220 N.W.2d at 263; *Kehr*, 426 N.W.2d at 236. Moreover, the City placed the subject property in the urban reserve in order to comply with directives of the Metropolitan Council. Thus, rezoning the subject property to permit residential development at urban densities also would be inconsistent with the Metropolitan Council's regional plan. This is a second legally sufficient reason to deny an application to rezone. *See Larson*, 387 N.W.2d at 907.

Concept Properties relies on our recent decision in *PTL, LLC v. Chisago County Bd. of Comm'rs*, 656 N.W.2d 567 (Minn. App.2003), to advance its argument that reliance on a comprehensive plan is a legally insufficient basis to deny an application to rezone. But *PTL* is legally and factually inapposite. In *PTL*, the property owner sought approval of a plat that was

consistent with a *permitted* use under the zoning ordinance, but *prohibited* under the comprehensive plan. *Id.* 574–75. The county denied approval, relying on the comprehensive plan and ignoring the zoning ordinance. *Id.* at 575. In reversing the county's decision, we held that a comprehensive plan does not provide an independent source of discretionary authority for denying approval of a plat where the plat conformed to the requirements of existing zoning ordinances. *Id.* at 574. The holding in *PTL* is limited to instances when a zoning ordinance conflicts with a comprehensive plan. In contrast, Concept Properties is not seeking approval of a permitted use. Rather, it is seeking approval of a land use that is inconsistent with both the existing zoning ordinance and the comprehensive plan.

Moreover, because Chisago County is not part of the metropolitan area subject to Metropolitan Council supervision, the comprehensive plan at issue in *PTL* was neither subject to Metropolitan Council review nor revised at the direction of the Metropolitan Council. Acceptance by the Metropolitan Council after revision to comply with regional land-use requirements gives the comprehensive plan at issue here additional weight. *Cf. Amcon Corp.*, 348 N.W.2d at 74.

■■■ The City also based its denial of Concept Properties' application on the lack of available water in the area of the subject property. The city engineer's reports provide factual support for this finding. A land-use decision based on the scarcity of resources to support the proposed land use is not unreasonable. *See Hay*, 436 N.W.2d at 806 (finding rational basis to deny request to change sewer districts when city based decisions on practical recommendations in engineering report).

Because Concept Properties failed to establish that the City denied its application to rezone on a legally or factually insufficient basis, and the record provides no evidence demonstrating that the SDD zoning classification was "a mistake" or that the neighborhood has changed significantly since the zoning classification, summary judgment in favor of the city on this ground was properly granted.

**II.**

Concept Properties next asserts that, even if it was not arbitrary and capricious for the City to make land-use decisions that ultimately altered the subject property's MUSA status, it was inequitable and unconstitutional for the City to deprive the subject property of MUSA inclusion until after 2020 when a prior owner of the subject property paid a sewer assessment. We analyze the merits of Concept Properties' argument on several grounds, namely (a) vested rights, (b) equitable estoppel, (c) the takings clause of the Minnesota Constitution, and (d) substantive due process.

**A.**

■■■ Concept Properties argues that, because a former owner of the subject property paid a sewer assessment in 1975, Concept Properties possesses a vested right to be included in the MUSA and to be permitted to connect to the sewer. The vested rights doctrine typically is used as an alternative way of resolving land-use controversies between a developer and a government entity. *Ridgewood Dev. Co. v. State*, 294 N.W.2d 288, 294 (Minn.1980). In this context, we determine whether a developer has made sufficient progress with its project or created such binding commitments as to acquire a vested right to complete the project. *Id.*

■■■ As a general rule, a right becomes vested when it has "arisen upon a contract, or transaction in the nature of a

contract, authorized by statute and liabilities under that right have been so far determined that nothing remains to be done by the party asserting it." *Id.* (quoting *Yaeger v. Delano Granite Works,* 250 Minn. 303, 307, 84 N.W.2d 363, 366 (1957)). A mere expectation, desire, or intention to develop a property in a particular way is not sufficient to create a vested right. *Wermager v. Cormorant Township Bd.,* 716 F.2d 1211, 1215 (8th Cir. 1983). To acquire a vested right, a developer must have progressed significantly with physical aspects of the project or made a binding commitment to develop the property. *Id.* The purchase of property or acquisition of a building permit fails to create a vested right in development. *Hawkinson v. County of Itasca,* 304 Minn. 367, 376–77, 231 N.W.2d 279, 284 (1975); *Kiges v. City of St. Paul,* 240 Minn. 522, 538, 62 N.W.2d 363, 373 (1953). Likewise, neither a municipality's preliminary approval of a project nor a determination that a development plan would be consistent with applicable land-use regulations will create a vested right. *Ridgewood Dev. Co.,* 294 N.W.2d at 294. And most notably, payment of an assessment for construction of a sewer system does not create a vested right in a land use that contravenes municipal land-use regulations. *Wermager,* 716 F.2d at 1215.

Concept Properties' argument that it possesses a vested right to have its property included in the MUSA and connected to the sewer system fails for two reasons. First, the record does not establish that, in exchange for the predecessor landowner's payment of the sewer assessment, the City made a binding commitment to connect the property to the sewer or permit a particular land-use project. In 1975, the City assessed all properties that were in the MUSA as part of a project designed to expand and improve the sewer system in the area for development within the next 10 to 20 years. The City assessed all properties anticipated to have sewer services in the future, but it never represented that the properties would be able to connect to the sewer at a particular time. The sewer assessment did not convey to the prior owner immediate connection to the sewer or immediate sewer service. On the contrary, the special benefit conferred by the sewer assessment was the increased market value of the property due to *potential access* to the trunk sewer. *See Quality Homes, Inc. v. Vill. of New Brighton,* 289 Minn. 274, 281, 183 N.W.2d 555, 560 (1971) (noting that "benefits [from special assessments] are to be measured by increased market value" and the "[m]arket value of a lot may be increased by a potential access to a trunk sewer" (quotation omitted)).

On the record before us, the sewer assessment created, at most, an expectation that the property owner would be able to connect to the sewer and develop the property in the next 10 to 20 years. An expectation to develop the property does not create a vested right to do so. *See Wermager,* 716 F.2d at 1215.

Second, other than a sewer assessment paid by a former owner, Concept Properties has not expended funds to develop the property. When Concept Properties purchased the property in October 1998, it did so with the mere expectation that, based on the MUSA designation, it could develop the property at urban densities in 2005. But between 1998 and 2005, Concept Properties did not expend funds physically developing the property for the proposed use. Even if Concept Properties purchased the property with the intention to develop the property into 20,000–square–foot lots, the actual implementation of this plan has not progressed far enough to

create a vested right in its completion. *See id.*

## B.

 Concept Properties also argues that, because the City collected the sewer assessment from a predecessor landowner, the City is now estopped from refusing MUSA status to the subject property. When the facts permit only one conclusion, the application of equitable estoppel is a question of law subject to de novo review. *State v. Ramirez,* 597 N.W.2d 575, 577 (Minn.App.1999); *In re Amended Admin. Penalty Order to Westling Mfg., Inc.,* 442 N.W.2d 328, 331 (Minn.App.1989), *review denied* (Minn. Aug. 25, 1989).

 Equitable estoppel, like the doctrine of vested rights, provides an alternative means to resolve developer-government conflicts over land-use decisions. *Ridgewood Dev. Co.,* 294 N.W.2d at 292. In this context, a plaintiff must demonstrate that, relying in good faith on an act or omission of the government, it made such a substantial change in position or incurred such extensive obligations that it would be unjust to destroy the rights ostensibly acquired. *Save Lantern Bay v. Cass County Planning Comm'n,* 683 N.W.2d 862, 868 (Minn.App.2004). Because courts must also consider the public interest in applying estoppel against the government, a governmental entity will be estopped only if it committed affirmative misconduct. *Ridgewood Dev. Co.,* 294 N.W.2d at 292–93; *see also In re REM–Canby, Inc. v. Minn. Dep't of Human Servs.,* 494 N.W.2d 71, 74 (Minn.App.1992), *review denied* (Minn. Feb. 25, 1993) (requiring affirmative misconduct, rather than simple inadvertence, mistake, or imperfect conduct for estoppel to apply against the government). The government's act or omission must be tantamount to an affirmative misrepresentation rather than a mere impression. *See Brown v. Minn. Dep't of Pub. Welfare,* 368 N.W.2d 906, 910 (Minn.1985) (holding that Department of Public Welfare was not estopped from collecting funds when no affirmative representation was made but "impression" was left that doctor need not comply with payment). And the loss to the developer must be significant. For a landowner to receive judicial protection, it must demonstrate that, in reliance on the governmental act, it incurred expenditures unique to the proposed project that otherwise would not be usable. *Ridgewood Dev. Co.,* 294 N.W.2d at 292. If there is another way that the land could be used profitably, the plaintiff cannot establish a basis for equitable estoppel. *Id.*

Concept Properties' claim fails for several reasons. First, Concept Properties failed to establish reliance. Concept Properties did not own the subject property in 1975 and could not have relied on the sewer assessment as an affirmative representation that the City would connect the property to the City sewer line at any particular time. *See Ramirez,* 597 N.W.2d at 578 (finding no equitable estoppel when individual failed to present any evidence of reliance on government representations).

Second, the record does not demonstrate that the City made a requisite "act or omission" on which Concept Properties purports to rely. Concept Properties apparently claims that by assessing the subject property for sewer in 1975, the City made a representation that the property would be connected to the sewer. As discussed in our vested-rights analysis, the City made no such representation. At most, the City created an impression or expectation that the property owner could connect to the sewer in the next 20 years, which is not sufficient to establish equita-

ble estoppel. *See Brown*, 368 N.W.2d at 910.

Third, Concept Properties has not made sufficient progress developing the subject property as to have incurred expenditures on its development project that could not be put to another use. On the undisputed facts, Concept Properties has not acquired a right to develop the subject property in the proposed manner.

Fourth, Concept Properties alleges no affirmative misconduct by the City. And the record fails to establish any misconduct, as we have already concluded that the City did not act arbitrarily or capriciously in changing the MUSA in the process of enacting its 1998 comprehensive plan. Accordingly, the district court did not err in rejecting Concept Properties' equitable estoppel claim.

### C.

■ Concept Properties next claims that the City's "beyond 2020 MUSA" classification, adopted in the 1998 comprehensive plan, constitutes an unconstitutional taking because it interferes with the special benefit conferred on the subject property by the sewer assessment and "severely diminishes the value of the Property."

■ The Minnesota Constitution provides, "Private property should not be taken, destroyed, or damaged for public use without just compensation." Minn. Const. art. I, § 13. When the facts are undisputed, whether state action constitutes an unconstitutional taking is a question of law, which we review de novo. *Zeman v. City of Minneapolis*, 552 N.W.2d 548, 552 (Minn.1996); *Arcadia Dev. Corp.*, 552 N.W.2d at 285; *Thompson v. City of Red Wing*, 455 N.W.2d 512, 516 (Minn.App. 1990), *review denied* (Minn. June 6, 1990).

As a preliminary matter, Concept Properties misstates the record by assuming that the "special benefit to the property in 1975 and afterwards was the present availability of sanitary sewer service to the Property." The sewer assessment did not convey to the prior owner immediate connection to the sewer or immediate sewer service. As addressed earlier, the special benefit conferred by the sewer assessment was the increased market value of the property due to the potential access to the trunk sewer. *See Quality Homes*, 289 Minn. at 281, 183 N.W.2d at 560.

This benefit—the increased market value—still exists. The City's decision to delay inclusion of the subject property in the MUSA until after 2020 does not deprive the subject property of its potential access to a trunk sewer. The City's refusal to allow residential development at urban densities until after 2020 does not interfere with the sewer benefit conferred on the subject property by the sewer assessment.

■ If we construe Concept Properties' argument as a general challenge to a land-use decision that decreases the value of private property, we then address Concept Properties' claim under regulatory takings law. When the exercise of state police power regulation of private property "goes too far," it constitutes a taking. *Zeman*, 552 N.W.2d at 552. In zoning cases, Minnesota courts employ one of two tests to review a regulation that interferes with private property—the enterprise test or the arbitration test. *McShane v. City of Faribault*, 292 N.W.2d 253, 257–58 (Minn. 1980).

■ The enterprise test is employed when a regulation, to the detriment of private property, benefits a specific governmental enterprise that serves the public. *See McShane*, 292 N.W.2d at 258–59 (applying enterprise test to zoning regulation that burdened private land underneath flyway where regulation was

adopted to benefit a governmental enterprise). This analysis is triggered only when a specific governmental enterprise takes an effective easement on the property, causing a substantial diminution in market value. *Thompson*, 455 N.W.2d at 517.

When a specific governmental enterprise does not benefit from the regulation, the regulatory purpose involves government arbitration between competing land uses, and courts apply the arbitration test. *McShane*, 292 N.W.2d at 257–58; *Thompson*, 455 N.W.2d at 517. The arbitration standard reflects the "increasing complexity of society and the realization that property must be viewed more interdependently." *McShane*, 292 N.W.2d at 257 (quoting *County of Pine v. State, Dep't of Natural Res.*, 280 N.W.2d 625, 630 (Minn.1979)).

In applying the arbitration standard, we consider whether the regulation deprives the property of all reasonable uses. *Thompson*, 455 N.W.2d at 517; *Larson*, 387 N.W.2d at 907. The burden is on the landowner to demonstrate that governmental action denied the landowner all reasonable use of the property. *Larson*, 387 N.W.2d at 907–08. If an alternative use is available, even if it is not the most profitable use, the regulation has not denied the property all economically beneficial use. *Larson*, 387 N.W.2d at 908; *McShane*, 292 N.W.2d at 258.

Here, the City established its MUSA scheme as part of a comprehensive planning objective to balance many public interests and to promote the City's particular land-use goals and rural values. We, therefore, apply the arbitration standard to determine whether all reasonable uses of the property have been precluded. *See McShane*, 292 N.W.2d at 257.

It is undisputed that Concept Properties has begun construction of a single-family residence and a building that will be used as a nursery. Because the subject property is not part of the MUSA, Concept Properties cannot connect to the City's sewer line to service these buildings. But a septic system can be built to serve the subject property. Under the current zoning ordinances, Concept Properties may construct three more homes on the subject property. Although the inability to connect to the sewer makes development of the subject property more difficult, it does not deny the property all reasonable use. Although less profitable than the proposed use, Concept Properties has alternate uses available. The absence of any evidence that the 2020 MUSA designation deprives the subject property of all economically beneficial value defeats Concept Properties' takings claim.

Relying on the Minnesota Supreme Court's recent decision in *Johnson v. City of Minneapolis*, 667 N.W.2d 109 (Minn.2003), Concept Properties claims that the district court was compelled to apply a more lenient test than the arbitration test. We disagree. In seeking a more lenient standard, Concept Properties ignores the land-use context giving rise to the governing body of caselaw. *Johnson* is distinguishable for several reasons. Most notably, *Johnson* pertained to a series of condemnation actions brought by the City of Minneapolis that amounted to an "abuse of the power of eminent domain," which was tantamount to a regulatory control directed at a particular parcel. *Id.* at 113–14, 116. The unique facts in *Johnson* involved the governmental entity intentionally interfering with a particular piece of property through condemnation actions. *Id.* at 116. The governmental entity was not enacting land-use legislation or policy. *Id.* Here, in contrast, the City was plain-

ly acting in its arbitration function by articulating land-use policy when revising its comprehensive plan. Concept Properties' reliance on *Johnson* is, therefore, misplaced.

Concept Properties attempts to remove this case from its proper land-use context by characterizing the takings issue as a challenge to a special assessment, rather than a challenge to a land-use regulation. Arguing that a city's assessment is unjustified when the property owner would be unable to connect to the sewer for 15 to 20 years, Concept Properties relies on *In re Burnsville Assessments for Improvement No. 70TS–8 for Sanitary Sewer,* 287 N.W.2d 375 (Minn.1979), and contends that the sewer assessment constitutes a taking. But the *Burnsville* court addressed a timely challenge to a special assessment and concluded that, because the assessment outweighed the benefit to the property, the property owner did not have to pay the assessment. *Id.* at 377. Here, however, a predecessor owner of the subject property paid the sewer assessment in 1975 without ever questioning the timing of development, let alone the assessment's constitutionality. Nearly 30 years later, the question before us is whether a change in the MUSA designation in a comprehensive plan effected a taking of private property without just compensation, not whether the special assessment was proper. *Burnsville Assessments* does not govern our analysis here.

Because the 2020 MUSA designation did not deprive the property of all reasonable uses, Concept Properties' takings claim fails.

**D.**

■ Concept Properties next argues that the City's decision to delay the MUSA staging for the subject property until at least 2020, after a sewer assessment has been paid, constitutes irrational conduct, in violation of Concept Properties' substantive due process rights.

■ When reviewing a zoning decision, we apply a two-part test to determine whether a municipality violated substantive due process. In doing so, we consider, "first, whether there has been a deprivation of a protectable property interest and, second, whether the deprivation, if any, is the result of an abuse of governmental power sufficient to state a constitutional violation." *Northpointe Plaza v. City of Rochester,* 465 N.W.2d 686, 689 (Minn.1991); *Kottschade v. City of Rochester,* 537 N.W.2d 301, 308 (Minn.App. 1995), *review denied* (Minn. Nov. 15, 1995).

■ "[A] substantive due process claim in the zoning context exists, if at all, only in extraordinary situations and will not be found in 'run-of-the-mill' zoning disputes." *Northpointe Plaza,* 465 N.W.2d at 690. The governmental action must be "egregious," "irrational," or "extraordinary." *Id.* at 691. Even arbitrary governmental action or government decision-making lacking a factual basis will not support a substantive due process claim. *Id.* Courts generally have found substantive due process claims available in zoning cases only when the conduct of the decision-maker was motivated by personal or political animus. *Id.*

■ Here, Concept Properties has introduced no evidence supporting a theory that the City Council engaged in "egregious" or "extraordinary" conduct in deciding to change the MUSA boundary. Having already concluded that the City acted rationally within its legislative function in adopting the comprehensive plan in accordance with city and regional policies, we also conclude that such action by the City does not violate the principles of a substantive due process. Moreover, the rec-

ord is devoid of any evidence that the City acted with animus. *See Northpointe Plaza*, 465 N.W.2d at 691. The City changed approximately 75 parcels in addition to the subject property to the "beyond 2020 MUSA" designation at the direction of the Metropolitan Council to comply with a regional land-use plan. That a former owner of the subject property paid a sewer assessment does not make it egregious for the City to shift the MUSA line, particularly when the City never promised MUSA status or a sewer connection in exchange for the payment. Notably, this is not a case in which the City deprived an owner of *all* future ability to connect to the sewer. Rather, the City merely delayed the fulfillment of that ability. On this record, we conclude that the City did not violate Concept Properties' substantive due process rights.[3]

## III.

■ In its final challenge, Concept Properties contends that the City's failure to strictly comply with Minn.Stat. § 15.99 (2002)[4] mandates automatic approval of its application to have the subject property rezoned. When, as here, the grant of summary judgment involves the application of a statute to undisputed facts, we undertake de novo review. *N. States Power Co.*

*v. City of Mendota Heights*, 646 N.W.2d 919, 924 (Minn.App.2002), *review denied* (Minn. Sept. 25, 2002).

When we interpret a statute, we first determine whether the statutory language, on its face, is ambiguous. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn.2001). A statute is ambiguous when its language is "subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). If the legislative intent "is clearly discernible from plain and unambiguous language, statutory construction is neither necessary nor permitted and courts apply the statute's plain meaning." *Am. Tower, L.P.*, 636 N.W.2d at 312; *see also* Minn.Stat. § 645.16 (2004).

The purpose of Minn.Stat. § 15.99 is to ensure timely land-use decisions by governmental agencies. *Tollefson Dev., Inc. v. City of Elk River*, 665 N.W.2d 554, 558 (Minn.App.2003), *review denied* (Minn. Sept. 24, 2003). Section 15.99, subdivision 2, provides in pertinent part:

An agency must approve or deny within 60 days a written request relating to zoning . . . or expansion of the metropolitan urban service area for a permit, license, or other governmental approval of an action. Failure of an agency to

**3.** Concept Properties also argues on appeal that the district court erred in granting summary judgment in favor of the City on its equal protection claim. We agree that the district court erred in granting summary judgment, but not because the district court erred as a matter of law or because material facts are in dispute. The district court erred in granting summary judgment on an issue that no longer was before it. Concept Properties raised only an equal protection claim under the United States Constitution in Count VII of its complaint. Concept Properties subsequently dismissed its federal claims in response to the City's notice of removal to federal court. In its Notice of Dismissal dated June 18, 2003, Concept Properties' counsel

stated, "[Concept Properties], by and through its counsel, hereby dismisses, without prejudice, Count VIII and the federal claims asserted in Counts III, IV, VI and VII of its Complaint." Because Concept Properties dismissed its equal protection claim, the district court erroneously entered summary judgment on an issue that was not before it.

**4.** Minn.Stat. § 15.99 was amended in 2003 and became effective beginning with written requests submitted on or after June 1, 2003. 2003 Minn. Laws ch. 41, § 2. Because Concept Properties' application was submitted on March 19, 2002, we apply the version of section 15.99 in effect at that time.

deny a request within 60 days is approval of the request. If an agency denies the request, it must state in writing the reasons for the denial at the time that it denies the request.

Minn.Stat. § 15.99, subd. 2(a). An agency may extend the 60–day period to deny a request for an additional 60 days if the agency provides the applicant with written notice before the initial 60–day period expires. *Id.*, subd. 3(f). Or the applicant may agree to allow the agency a longer period of time than the statutorily prescribed timeframe to make its decision. *Manco of Fairmont Inc. v. Town Bd.*, 583 N.W.2d 293, 296 (Minn.App.1998), *review denied* (Minn. Oct. 20, 1998). An agency includes a city or municipality. Minn.Stat. § 15.99, subd. 1(b).

The parties agree that the deadline for approving or denying Concept Properties' application, after numerous written extensions, was May 27, 2003. Concept Properties argues that the City failed to comply with section 15.99 because the City (a) neglected to provide Concept Properties with its written decision by the May 27, 2003 deadline; and (b) failed to adopt formal written findings at the time that it denied Concept Properties' request.

Notably absent from the language of section 15.99 is any requirement that an applicant *receive* written reasons for the denial within the agreed upon timeframe. Subdivision 2 states that "a failure to deny a request" within the statutory or agreed upon timeframe will be deemed an approval of the application. Subdivision 3(c) further clarifies that an agency response meets the statutory time limit "if the agency can document that the response was *sent* within 60 days of receipt of the written request." *Id.*, subd. 3(c) (emphasis added). Applying the plain meaning of this rule to a circumstance when the parties have agreed to their own deadline, it is clear that the agency complies with the statute as long as the agency can document that it made a decision to deny the application and sent a decision by the deadline.

Here, the record establishes that the City denied Concept Properties' application at a City Council meeting on May 5, 2003, and subsequently denied the application by formal resolution with written findings on May 19, 2003. The City essentially denied Concept Properties' application twice, both times before May 27, 2003. Complying with subdivision 3(c), the City also submitted evidence that it mailed a copy of the resolution denying Concept Properties' application to Concept Properties' representative on May 27, 2003. Thus, the City complied with Minn.Stat. § 15.99 by issuing a timely decision.

■ Concept Properties next argues that the City violated section 15.99 by failing to state in writing the reasons for the denial of its application "at the time that it denie[d] the request." In *Demolition Landfill Servs., LLC v. City of Duluth*, we stated in dictum that the statute requires an agency to provide "simultaneous" written reasons for a denial. 609 N.W.2d 278, 282 (Minn.App.2000), *review denied* (Minn. July 25, 2000). The *Demolition Landfill* court concluded that the simultaneous writing requirement is a mandatory provision and, therefore, written reasons for the denial contained in a later resolution prepared after the deadline are not sufficient. *Id.* at 281–82.

In *Demolition Landfill*, we ultimately concluded that, "absent a denial within the statutory time limit *and* simultaneous, written reasons for the denial, the permit application [was] deemed approved." *Id.* at 282 (emphasis added). *Demolition Landfill* does not address whether an absence of simultaneous written reasons for a *timely* denial can be cured before the

deadline by a subsequent denial with simultaneous written findings.

Here, while the City Council was discussing the application on May 5, 2003, Concept Properties' representative stated that "he would like a decision." By oral vote of 3 to 2, the City denied Concept Properties' application. The minutes taken during the City Council meeting establish that the City Council members extensively discussed the application, and their concerns are documented in writing. On May 19, 2003, the City Council adopted resolution 38–03 by a vote of 5 to 0, which again denied Concept Properties' application and set forth the City's written findings and reasons for the denial.

Indeed, on May 5, 2003, the City failed to comply with Minn.Stat. § 15.99, subd. 2, by neglecting to make written findings at the time the application was denied by a 3 to 2 oral vote. However, unlike the facts in *Demolition Landfill*, the City voted on the application a second time before the deadline and issued a resolution, which contained simultaneous written findings.[5] We, therefore, distinguish *Demolition Landfill* and conclude that, because the City made a second decision denying Concept Properties' application within the timeframe set by the parties, the written findings accompanying the second decision are sufficient to meet the "simultaneous" writing requirement of section 15.99.

In reaching this conclusion, we note that the facts at issue here do not present any of the mischief that the simultaneous writing requirement seeks to address. The rationale for mandating written findings accompanying a decision to deny a zoning application is to prevent a government's post hoc rationalization of a capricious decision. *Demolition Landfill*, 609 N.W.2d

at 282. The record here establishes that the Planning Commission and the City Council held meetings on Concept Properties' application for over a year, that council members and city engineers extensively researched the subject property, and that, at the May 5, 2003 meeting, council members raised numerous concerns that are reflected in the minutes of the meeting and again in the written findings of the resolution adopted on May 19, 2003. Thus, there is no basis for concerns regarding bad faith or other mischief.

 We, therefore, hold on these facts that an agency may, in good faith, cure a violation of the simultaneous written findings requirement within the statutory or agreed-upon deadline by issuing a second timely decision accompanied by simultaneous written findings.

## DECISION

Based on an extensive review of the municipal record and de novo application of the law to the issues raised, the district court did not err in granting summary judgment in favor of the City.

**Affirmed.**

---

**5.** In the second vote on the application, the margin for denial changed from 3 to 2 to 5 to 0.